Susan WITT

v.

John MORAN, Director Department
of Corrections.

Affadella JORDAN

v.

John MORAN, Director Department
of Corrections.

Nos. 89–296–M.P., 89–303–M.P.

Supreme Court of Rhode Island.

March 23, 1990.

Edward J. Corcoran, II, for Susan Witt.

Richard Casparian, Public Defender, Paula Rosin, Barbara Hurst, Asst. Public Defenders, for Affadella Jordan.

James E. O'Neill, Atty. Gen., Caroline Cole Cornwell, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for defendant.

## OPINION

MURRAY, Justice.

This consolidated case is before the court on petitions for writs of certiorari filed by the defendants, Susan Witt and Affadella Jordan. At their bail hearings in the Second Division District Court on May 24, 1989, the defendants were ordered held without bail pursuant to G.L.1956 (1981 Reenactment) § 12–13–5.1, as amended by P.L.1988, ch. 652, § 1. They now appeal claiming that the bail statute is unconstitutional. We find that although § 12–13–5.1 is constitutional, it was not constitutionally applied in both defendants' bail hearings. We therefore take this opportunity to interpret § 12–13–5.1 and to give guidance to trial justices faced with applying the statute in the future.

The defendant Susan Witt (Witt) was charged with having delivered cocaine to an undercover Newport police officer. At Witt's bail hearing on May 24, 1989, the state presented Detective Terry Hazel (Hazel) of the Middletown police department as a witness. He testified that on April 5, 1989 at 6 p.m. he met with two informants at the Middletown police department. At 8:30 p.m. Hazel drove with the informants to 84 Mahan Street where they encountered Witt. After Hazel and Witt exchanged a few words relating to the sale of a small amount of cocaine, Witt handed the detective a small bag of a white powdery substance that later tested positive for cocaine.

Witt presented testimony establishing that she is a twenty-three-year-old single

mother[1] of two small children, ages six years and one year. She is a life-long resident of Newport and all her immediate family lives on Aquidneck Island. She has no previous criminal record.

At the close of the testimony the trial justice decided that the proof of guilt is evident that a delivery did take place. Moreover, Witt had not submitted enough evidence to overcome the statutory presumption of dangerousness. The court therefore would not exercise its discretion and grant bail. The trial justice did, however, upon defense counsel's objection admit that the presumption of dangerousness can be rebutted. He stated that the criteria required for rebutting the presumption are subject to judicial discretion and are "based upon ties to community, to one's church if they have one, and as to social activities, as to family ties and all other criteria that we have historically used when we make a determination as to setting of bail."

The defendant Affadella Jordan (Jordan) was also charged with delivering cocaine. She reportedly participated twice in the sale of cocaine to Detective Hazel. At Jordan's bail hearing, Hazel testified that on February 18, 1989, at approximately 9:40 p.m. he met with Jordan and a man at 61 Mahan Street, Newport. Hazel gave the man $100 and requested five foils of cocaine. The detective then followed the two to 84 Mahan Street. The defendant and her companion went inside for a few moments. Hazel then testified that Jordan gave the man some foils to give to Hazel. She then handed Hazel $20 explaining that she did not have enough cocaine to meet Hazel's request. The substance handed to Hazel tested positive for cocaine.

Hazel also testified that he encountered Jordan again on February 23, 1989. Hazel testified that he went to 61 Mahan Street for the purpose of purchasing cocaine. He testified that Jordan and a man named John there sold him $100 worth of cocaine.

The substance again tested positive for cocaine.

At her bail hearing Jordan presented witnesses who testified that she is a resident of Newport, Rhode Island, where she has lived for most of her life. The defendant's cousin testified that Jordan is a thirty-four-year-old mother of two children, aged fourteen and two. Evidence was also submitted that a job was available to Jordan if she were to be released on bail. Moreover, she had no prior criminal record.

The trial justice then decided that the state had established that the proof of guilt was evident or the presumption great that Jordan would be found guilty of delivering cocaine. He explained that because defendant Jordan had not rebutted the presumption of dangerousness, he would therefore not exercise his discretion in granting bail. In explaining what type of evidence should be submitted to rebut the presumption, the court stated that the presumption "would have to be rebutted with some fairly good evidence of law abidingness, lack of flight, ties to the community, employment verification or some other kinds of ties to the community." Although the trial justice was impressed with the fact that Jordan's two children needed to be cared for and she was therefore less likely to flee the jurisdiction, he concluded that the evidence submitted was insufficient to rebut the presumption created by § 12-13-5.1.

■ As a preliminary matter we recognize that in deciding the constitutionality of § 12-13-5.1, we shall not change the fate of the two defendants.[2] On September 15, 1989, the charges against defendant Witt were amended, and she pled nolo contendere to a charge of possession of cocaine. She was sentenced to three years at the Adult Correctional Institutions (ACI), four months to serve, given credit for time served and was released. The Defendant Jordan also pled nolo contendere to two counts of delivering and two counts of conspiracy to deliver cocaine on September 28,

---

1. Ms. Witt's husband abandoned the family three years ago. She presently receives Aid to Families with Dependent Children.

2. The defense attorneys concede this point but nonetheless urge us to address this "extremely important question of public interest."

1989. She was sentenced to ten years at the ACI with eighteen months to serve. As both defendants have been sentenced, a new bail hearing cannot now be granted.

This court has on occasion granted writs of certiorari to review "questions of extreme public importance, which are capable of repetition but which evade review." *E.g., Morris v. D'Amario,* 416 A.2d 137, 139 (R.I.1980). In *Morris* a juvenile filed a writ of certiorari requesting that we review the legality of his detention at the Training School. Morris was released after his petition was filed but before this court had the opportunity to review those issues raised. The court nonetheless reviewed the merits of Morris' claim because they were of extreme public importance and were capable of repetition but evading review. *See also Mello v. Superior Court,* 117 R.I. 578, 581, 370 A.2d 1262, 1263 (1977) (this court reviewed the constitutionality of bail revocation as conditioned on good behavior even though the defendant had already been released). Our approach to review these types of moot questions is consistent with the approach of the United States Supreme Court. *See, e.g., Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, 161 (1973) (citing *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911)).

We believe that this is one of those cases wherein the issue is capable of repetition yet evading review. Moreover the constitutionality of a statute which is applied daily to defendants facing drug charges is a matter of extreme public importance. If we were to decide not to review this case because it is moot and it no longer affects the lives of the defendants raising the issue, we would never be able to review it at all. We are mindful that before reaching the court via a writ of certiorari, most defendants will have already been sentenced.

In reviewing the constitutionality of § 12–13–5.1, we carefully consider the Constitution of the State of Rhode Island, article I, section 9. This section was amended in November 8, 1988, to provide that:

"[a]ll persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by imprisonment for life, * * * or for offenses involving the unlawful sale, distribution, manufacture, delivery, or possession with intent to manufacture, sell, distribute or deliver any controlled substance or by possession of a controlled substance punishable by imprisonment for ten (10) years or more, when the proof of guilt is evident or the presumption great."

This section provides that no absolute right to bail exists in Rhode Island for defendants charged with the delivery of a controlled substance when the proof of guilt is evident or the presumption great. Its enactment represents the public's response to the present drug crisis in society. *See* Committee Report as printed in Journal of the 1986 Constitutional Convention at 42–43 (June 11, 1986).

Similarly § 12–13–5.1 is the legislative response to this state's drug problem. In light of the amended constitution and the new statute, trial justices are charged with a special duty in setting bail. The statute requires that the trial justice consider that a high probability exists that one who is shown to be guilty of a drug-related offense is also dangerous. *McCormick on Evidence* § 343 at 969 (3 ed. Cleary 1984).

Although the defendants do not have a constitutional right to bail, they do have a constitutional right to have their bail determined in accordance with the due process clause. In *Mello,* this court addressed the constitutionality of revoking a defendant's bail for failure to abide by a condition of release. This court took the opportunity to express clearly the now well-known principle that bail-revocation hearings must abide by the procedural due process clause of the Fourteenth Amendment.

"There can be little doubt that one's interest in remaining free on bail falls within the 'liberty or property' language of the [F]ourteenth [A]mendment. Nor could one argue that the deprivation of liberty which follows bail revocation does not condemn one 'to suffer grievous

loss.' * * * Therefore, the requirements of due process apply to bail revocation proceedings." *Mello*, 117 R.I. at 586, 370 A.2d at 1266.

The defendants object to § 12–13–5.1 because they claim that the statute "lends itself too easily to the assumption that the defendant bears the burden of persuasion, as well as production." The statute does make clear, however, that the state must object to the setting of bail, and until the objection is voiced, no presumption arises. The statute then requires the state to advance enough evidence to show that the proof of guilt is evident or the presumption great. In *State v. Neary*, 122 R.I. 506, 409 A.2d 551 (1979), this court found that a presumption in a criminal prosecution is not per se unconstitutional. We stated that "the burden of going forward with the evidence may indeed shift from side to side, and this same burden may properly devolve upon a defendant once the state has developed a prima facie case and has adduced evidence sufficient to make it just that the defendant be required to challenge the proof with excuse or explanation." *Id.* at 511–12, 409 A.2d at 555; *see also State v. Ballard*, 439 A.2d 1375, 1389 (R.I.1982).

Both the state and defendants have asked us to consider the Supreme Court case of *United States v. Salerno*, 481 U.S. 739, 107 S.Ct.2095, 95 L.Ed.2d 697 (1987), before reaching a conclusion on the constitutionality of the Rhode Island statute. In that case the Supreme Court reviewed provisions of the Bail Reform Act, 18 U.S.C.A. § 3142(e) (West 1985), which permits pretrial detention in order to prevent danger to the community. Although the defendants in *Salerno* were not charged with drug offenses and therefore the Court did not have the opportunity to address that section of the Bail Reform Act that corresponds to § 12–13–5.1,[3] the case nonetheless provides some guidance in reviewing our statute.

The first point that *Salerno* illustrates is that bail may be denied for reasons other than to guarantee the presence of the accused at trial. *Salerno*, 481 U.S. at 749, 107 S.Ct. at 2102, 95 L.Ed.2d at 710; *cf. Benoit v. Langlois*, 96 R.I. 129, 189 A.2d 805 (1963) (in 1963 bail could only be denied to guarantee the presence of the accused at trial). The Court in *Salerno* explained that pretrial detention does not constitute impermissible punishment because the legislative intent of the Bail Reform Act is to advance the legitimate regulatory goal of preventing danger to the community. *Salerno*, 481 U.S. at 747, 107 S.Ct. at 2101, 95 L.Ed.2d at 708. We agree. This court also finds it to be constitutionally permissible to hold a defendant without bail in order to prevent danger to the community.

Although we hold that § 12–13–5.1 is constitutional, we find that the statute in question fails to explain the necessary procedures for trial justices to follow in denying a defendant's release on bail. The statute provides the following:

"Presumption of danger to the community.—Whenever a person is charged with, or indicted or informed against for an offense involving the unlawful sale, distribution, manufacture, delivery or possession with intent to manufacture, sell, distribute or deliver any controlled substance or by possession of any controlled substance punishable by imprison-

---

**3.** The United States Supreme Court has not yet addressed the constitutionality of the following paragraph in 18 U.S.C.A. § 3142(e) (West 1985):

"Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) title 18 of the United States Code."

*But see United States v. Jessup*, 757 F.2d 378 (1st Cir.1985). In *Jessup* the First Circuit addressed the rebuttable presumption created by the Bail Reform Act that one charged with a serious drug offense will likely flee before trial. The court held that the presumption shifts to the defendant the burden of production, not the burden of persuasion.

ment for ten (10) years or more and the state objects to the setting of bail pursuant to the Rhode Island constitution, article I, section 9; if the court determines that the proof of guilt is evident or the presumption great, then it shall be presumed that the person is a danger to the safety of the community unless rebutted by the defendant." Section 12–13–5.1. The statute does not explain how this "[p]resumption of danger to the community" fits into the framework we established in *State v. Abbott*, 113 R.I. 430, 322 A.2d 33 (1974), for considering a defendant's bail. We therefore take this opportunity to explain how the statute may be constitutionally applied.

According to § 12–13–5.1, the state must initially prove that "proof is evident or presumption great" beyond probable cause. As this court explained in interpreting the Rhode Island Constitution, article I, section 9, which allows the denial of bail, the state must meet a significant burden before bail can be denied.

"First we think it clear from the language itself that 'proof is evident or the presumption great' means something more than probable cause for if it were to be read in such a manner, the guarantee would add nothing to the accused's rights, since a suspect may not be held without a showing of probable cause in any instance." *Fountaine v. Mullen*, 117 R.I. 262, 266–67, 366 A.2d 1138, 1141 (1976); *see also Massey v. Mullen*, 117 R.I. 272, 280, 366 A.2d 1144, 1148 (1976). In fact the holding is set forth specifically as follows: "[A]t a pre-trial bail hearing the hearing judge shall determine whether the facts adduced by the state, viewed in the light most favorable to the state (i.e., notwithstanding contradiction of them by defense proof), are legally sufficient to sustain a verdict of guilty." *Fountaine*, 117 R.I. at 268, 366 A.2d at 1142. In *Mello*, we addressed the case of a defendant whose bail was revoked for failure to abide by a condition of bail. We held that the state was required to show that the alleged breach of bail needed to be proven beyond probable cause so as to afford a defendant

the necessary due process. *Mello*, 117 R.I. at 587, 370 A.2d at 1266.

We reaffirm that the trial justice must determine that proof of guilt is evident by the quantum of proof mandated in *Fountaine v. Mullen*. This standard does not unduly burden the state to prove its entire case as would be required at the trial stage. Once the state meets its burden of proving that the defendant has committed the crime charged, the statutory presumption of dangerousness is applicable. Although the presumption of dangerousness permitted by the statute may aid the state in proving that this individual defendant should not be released on bail, the statute does not in and of itself allow or require the trial justice to deny the defendant's bail. In *State v. Abbott*, 113 R.I. 430, 433, 322 A.2d 33, 35 (1974), we set out the types of evidence to be considered at bail hearings in general:

1. The habits of the individual regarding respect for the law in regard to whether the defendant's release would pose a threat to the community.

2. Local attachments to the community by way of family ties, business, or investments.

3. The severity of the likely sentence imposed and the question of whether the defendant would remove himself or herself from the jurisdiction of the court.

The statute does not then allow the trial justice to abandon his role as trial justice and refuse to exercise his or her discretion in granting bail. Bail and the revocation of bail are within the judicial sphere of government and cannot be entirely delegated to the Legislature. Even if bail may be denied, therefore, the trial justice must exercise his or her discretion in deciding whether to grant bail and consider the factors that we set out in *Abbott*. In deciding whether to grant bail, the trial justice must make findings of fact on the record that relate to the individual defendant's dangerousness.

Other courts have found that similar statutes cannot constitutionally deny the trial justice an opportunity to exercise discretion. In *Huihui v. Shimoda*, 64 Haw.

527, 644 P.2d 968 (1982), a statute was found unconstitutional for precluding bail from being allowed in a situation in which a defendant was already on bail on a felony charge. The Hawaii Supreme Court found that the statute violated due process because it left no discretion for the trial justice to allow bail. Although the Hawaii Supreme Court couched its decision in terms of due process, we view such a statute that denies the trial justice an opportunity to decide bail as implicating separation-of-powers concerns.

 Once the state has advanced evidence to prove that proof of guilt is evident or the presumption great as required in *Fountaine v. Mullen*, § 12–13–5.1 provides that the defendant may advance evidence that he or she is not dangerous or will not engage in illegal drug activity while released on bail. If the trial justice finds that the defendant has submitted persuasive evidence to show that he or she is not dangerous, or will not engage in illegal drug activity while released on bail, the state loses the benefit of the statutory presumption of dangerousness. The court must then set bail at an amount that will ensure the defendant's future presence in court and may set further conditions to safeguard the community against the defendant's drug activities.

Other courts have found that allowing defendants the opportunity to rebut the statutory presumption is crucial to the constitutionality of the statute. In the federal case *Hunt v. Roth*, 648 F.2d 1148 (8th Cir.1981), the court found the Nebraska bail provision to violate the Eighth Amendment because of its conclusive presumption that defendants charged with enumerated offenses were likely to pose a danger to the community or not to appear at trial if released on bail. The court stated that the trial justice must be permitted to make individual determinations on the issue of an individual's dangerousness.

Briefly returning to our discussion of the *Salerno* case, we find that the restrictions on a defendant's liberty must be consistent with the circumstances. The Court stated that the procedures in the Federal Bail Reform Act were necessary in order to make the statute conform with due process.[4] These procedures included the requirement that the trial justice consider whether alternatives to denying bail would ensure that the defendant could not be a danger to the community. In addition, the defendant is entitled to a prompt detention hearing and a speedy trial. *Salerno*, 481 U.S. at 747, 107 S.Ct. at 2101, 95 L.Ed.2d at 709. The procedures discussed in the *Salerno* case make sure that the restrictions on a defendant's liberty satisfy the requirements of the due process clause by furthering the accuracy of a judicial determination of dangerousness. *Id.* at 751, 107 S.Ct. at 2103, 95 L.Ed. at 711.

 In accordance with the procedural due process requirements of *Salerno*, we endorse the procedural requirements discussed in the *Mello* case and set forth in Superior Court Rules of Criminal Procedure in order to limit the detention of a defendant before trial. *Mello* requires that when a person is arrested and held without bail, the defendant must be brought before a justice within forty-eight hours. *Mello*, 117 R.I. at 586, 370 A.2d at 1266; Super. R. Crim. P. 5. A trial date must then be set for "the earliest practicable date" within the next six months. Section 12–13–7, as amended by P.L.1985, ch. 463, § 1.

 In reviewing the facts in defendants' cases, we find that the trial justice[5] failed to make adequate findings of fact and revealed little of his reasoning. Moreover, the trial justice made no mention of the burden of proof with respect to the quantum of evidence adduced from defen-

---

4. In reviewing the due process requirements of the Federal Bail Reform Act, the Court in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) addressed the due process clause of the Fifth Amendment to the United States Constitution rather than the Fourteenth Amendment.

5. We refer to the trial justice singularly because, coincidentally, the same trial justice presided over Witt's and Jordan's bail hearings.

or the state. It appears, at least, that the trial justice in both cases failed to make individualized determinations of each defendant's eligibility for release.

As we stated above, the trial justice may not rely solely on § 12–13–5.1 in denying a defendant's bail. The statute is, however, constitutional if applied in accordance with the principles stated herein. These principles are applicable to all trial-court justices considering the application of § 12–13–5.1 in bail hearings.

For the reasons stated herein, the petitions for writ of certiorari are granted pro forma and the papers in the instant cases are remanded to the District Court with our decision endorsed thereon.