PROVIDENCE JOURNAL CO. and
Tracy Breton

v.

SUPERIOR COURT.

No. 89–371–M.P.

Supreme Court of Rhode Island.

June 19, 1991.

Joseph Cavanagh, Jr., Michael DiBiase, Karen Pelczarski, Blish & Cavanagh, Providence, for plaintiffs.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court following our issuance of a writ of certiorari that was sought by the petitioners to review the trial court's closure of the individual voir dire examination of prospective jurors to the press and public.

The issues arose out of the well-publicized trial of Donna Ordway, who was ac-

cused and subsequently convicted of manslaughter in the death of her husband, David Ordway. At the outset of her trial in August 1989, the trial court closed the individual voir dire examination of prospective jurors to the press and public. The general voir dire examination of prospective jurors remained open to the press and public. The limited closure was not objected to by either the prosecutor or defense counsel.

The petitioners, the Providence Journal Company and its reporter Tracy Breton (Breton), orally moved for leave to intervene in the proceedings to protest the closure of the individual voir dire examination of prospective jurors to the press and public. The trial court heard argument from counsel for the Providence Journal Company and Breton in opposition to the limited closure.[1]

At the hearing, the trial court explained that this limited closure was necessary because of the sensitive nature of the questions that were to be asked of prospective jurors. The trial justice said:

"This morning I told the lawyers that I was concerned as to the sensitive nature of the questions that would be asked of the jurors during the course of the individual inquiry. And those questions which I have permitted counsel to ask are of record; they are on file. And, many of them are very sensitive in nature, and I did not want any juror or prospective juror to be subjected to embarrassment or concern that his or her responses to such sensitive questions chilled their answer.

"For example, I have indicated to the State that it may ask questions relating to whether or not the juror or any members of his or her family had been subjected to abuse; or whether as an adult, or as a child whether they had close friends who were abused. And those kinds of questions, and others which are

of record now and [here] in the file, I felt ought not to be aired publicly or be responded to publicly, at least in the voir dire process."

The petitioners argued that the trial court's limited closure violated their First Amendment right of access because it failed to meet the guidelines established in *Press–Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*), wherein the United States Supreme Court held that a trial court's closure of individual voir dire, ostensibly to protect the privacy rights of prospective jurors, violated the press and public's First Amendment right of access to criminal proceedings. The petitioners in this case emphasized that the trial court's findings on the record failed to demonstrate that the limited closure was essential to protect the privacy right of prospective jurors and/or the defendant's right to a fair trial. The petitioners also asserted that the trial court's remedy to ameliorate any potential prejudice was not narrowly tailored.

The trial court denied petitioners' request to open the courtroom to the press and public during the individual voir dire examination of prospective jurors. The trial court attempted to distinguish *Press–Enterprise I* on the grounds that the court in that case issued a gag order prohibiting the dissemination of the transcript of the individual voir dire examination of prospective jurors. In the case before us the trial court reasoned:

"I make no such order in that regard. It may well be that the transcript, if and when available, will be also made available to the public, namely through the press. I have made no gag order. I have made no instructions to counsel to prevent them from speaking with you as to what goes on in the courtroom. I

---

1. The trial court should not have entertained the oral motion to intervene in this criminal proceeding. Our holding in *State v. Cianci*, 496 A.2d 139 (R.I.1985), was that third parties may not intervene in a criminal proceeding. They must seek declaratory judgment if they are aggrieved by an order of a trial court. Nevertheless, because we now have the record before us and because the trial court may have mistakenly believed our holding in *Cianci* was limited to pretrial criminal proceedings only, we shall address the issues before us.

have made no order with respect to the stenographer's notes."

The trial court also denied petitioners' motion to stay the ongoing criminal proceeding pending a final resolution of the issue in this court. The petitioners thereafter requested that this court stay the criminal proceeding below and grant them access to the trial court during the individual voir dire examination of prospective jurors. We refused their requests, and the criminal trial continued. After the conclusion of the trial this court granted the petition for a writ of certiorari.

■ As a preliminary matter we recognize that in deciding the present case, we shall not resolve the specific issue that gave rise to petitioners' filing this petition for a writ of certiorari. The issue of the limited closure in the Ordway murder trial has been technically rendered moot by the completion of the individual voir dire examination of prospective jurors. Nevertheless, this court has on occasion issued writs of certiorari to review "questions of extreme public importance, which are capable of repetition but which evade review." *Witt v. Moran*, 572 A.2d 261, 264 (R.I. 1990)(quoting *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I.1980)). In *Witt* two defendants who were held without bail petitioned for a writ of certiorari claiming that the bail statute (G.L.1956 (1981 Reenactment) § 12–13–5.1) was unconstitutional. However, prior to their challenge's reaching this court, both the defendants had pleaded to the charges and had already been sentenced. The case was therefore technically moot. The court nonetheless considered the merits of the defendants' challenge to the bail statute because it was of extreme public importance and was capable of repetition but evading review. *Witt*, 572 A.2d at 264. In this respect our approach in reviewing these types of moot questions is consistent with the approach followed by the United States Supreme Court. *Id.* (citing *Roe v. Wade*, 410 U.S.

113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, 161 (1973)).

We think the present case is similar to *Witt* in this regard. The case clearly presents a constitutional issue of extreme public importance. The issue of the closure of the trial court during the individual voir dire examination of prospective jurors requires the balancing, at the very least, of the defendant's Sixth Amendment right to a fair trial against the press and public's First Amendment right of access, and this case also raises an issue capable of repetition yet evading review. In this sense we are mindful that most challenges to the closure of the individual voir dire examination of prospective jurors will have been rendered moot by the completion of such individual voir dire examination prior to any challenge's reaching this court. Therefore, it is important for us to address this issue now to give guidance for future trials that may involve this or a similar issue.

■ It is undisputed that the press and the public have a constitutional right of access to attend criminal trials. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).[2] This right is implied in the First Amendment's "core purpose" of assuring free and open public discussion, *United States v. Peters*, 754 F.2d 753, 758 (7th Cir.1985)(citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575, 100 S.Ct. 2814, 2826, 65 L.Ed.2d 973, 988 (1980)), and has been specifically interpreted as including the right of access to the voir dire examination of prospective jurors in a criminal trial. *Press–Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The strength of this right, although not absolute, is such that any denial of the press and public's right of access to a criminal trial must be based on a compelling governmental interest that is narrowly tailored to serve that interest. *Globe*, 457 U.S. at 606–07, 102 S.Ct. at 2620–21, 73 L.Ed.2d at 257.

**2.** We refer the reader to *Press–Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), for a historical analysis of the evolution of the press and public's right of access to criminal trials.

This court has had occasion in the past to balance the competing constitutional interests of a defendant's right to a fair trial against the press and public's right of access to criminal proceedings. In *State v. Cianci*, 496 A.2d at 144, this court heard a challenge to a protective order issued by the trial court that sealed pretrial-discovery documents in a controversial and highly publicized criminal case. In its analysis the court examined recent United States Supreme Court decisions concerning the constitutional right of access to criminal proceedings, including *Press–Enterprise I*. The court observed that "[v]arying procedural and substantive tests have emerged from recent Supreme Court public-access-to-criminal-trial cases aimed at striking a balance between preserving the concept of 'openness' to judicial proceedings and protecting Sixth Amendment guarantees." *Cianci*, 496 A.2d at 144. In assimilating the teachings of these recent United States Supreme Court decisions into a viable and instructive standard for future trial courts of this state, the court found that a four-part inquiry should be made before any closure limiting the press and public's right of access is justified. The court stated that any closure "(1) must be narrowly tailored to serve the interests sought to be protected, (2) must be the only reasonable alternative, (3) must permit access to those parts of the record not deemed sensitive, and (4) must be accompanied by the trial justice's specific findings explaining the necessity for the order." *Id.*

■ In applying the standard enunciated in *Cianci* to the facts of this case, we come to the conclusion that the trial court's closure of the individual voir dire examination of prospective jurors may have been an unconstitutional infringement on the press and public's right of access to criminal proceedings because the four-part inquiry set forth in *Cianci* was not complied with. The trial court concluded that concern for the privacy rights of prospective jurors and the defendant's right to a fair trial merited limited closure. This conclusion, however, was unsupported by any facts in the record that demonstrated that an open proceeding would in fact imperil or prejudice those important interests. Consequently there was no compelling governmental interest that justified the limit imposed by the trial court on the press and public's right of access. In this respect the trial court's concerns were speculative and were an insufficient basis on which to conclude that a limited closure was necessary. *Press–Enterprise Co.*, 464 U.S. at 510–11, 104 S.Ct. at 824–25, 78 L.Ed.2d at 639; *In re Dallas Morning News Co.*, 916 F.2d 205, 206 (5th Cir.1990).

■ To avoid this problem, we encourage trial courts in the future to employ the methodology recently espoused by the Fifth Circuit in *In re Dallas Morning News Co.*:

"[T]he better practice is for the district court, rather than closing a portion of the voir dire proceeding in anticipation of privacy concerns, to inform the prospective jurors carefully, in advance, that any of them may request to be questioned privately, in the presence only of court personnel, the parties, and the attorneys.

"We recognize that the very act of requesting in camera questioning could compromise the candor of a venire member's response to sensitive questions. Hence, the district court may close the proceeding for the limited purpose of explaining to the venire members, together or individually, the general nature of the questions to be asked and giving each the opportunity, during the closed proceedings, to request to be questioned in camera, but only as to those matters that are sufficiently sensitive to justify the extraordinary measure of a closed proceeding." 916 F.2d at 206–07.

This methodology has the advantage of necessitating that prospective jurors make an affirmative request to be interrogated out of the view of the press and public. This allows the trial court to exercise its discretion about whether closure is merited, relying on specific information rather than mere speculation.

Moreover, even assuming that the findings necessary to demonstrate the compelling governmental interest to support the

limited closure were made, the trial court was required to consider any alternatives that might have been more narrowly tailored to protect the privacy interests of prospective jurors and the defendant's right to a fair trial. *Press–Enterprise Co.,* 464 U.S. at 511, 104 S.Ct. at 825, 78 L.Ed.2d at 639. We realize that, unlike *Press–Enterprise I,* the trial court did allow the press and public access to the questions to be asked of prospective jurors by both the prosecutor and defense counsel as well as allowing access to the stenographer's notes. The record also indicates that the trial court, both counsel, and petitioners unsuccessfully attempted to reach a compromise that would have allowed Breton access to the voir dire examination of prospective jurors. Because we have already ruled that the trial court failed to make findings sufficient to justify limited closure, we need not decide whether the trial court's consideration of these alternatives was constitutionally sufficient. However, we commend the trial court's sensitivity to this issue in considering these alternatives and urge trial courts in the future to consider these and other alternatives to closure that will be less intrusive on the press and public's right of access yet still capable of protecting the legitimate interests of prospective jurors and the defendant.

■ Finally we emphasize the trial court's obligation to permit access to those parts of the record not deemed sensitive when a closure is ordered.[3] The trial court must carefully balance the competing constitutional interests to ensure that the interests of justice are served. In this respect we believe that the following expression by the United States Supreme Court in *Press–Enterprise I* offers guidance to future trial courts:

> "When limited closure is ordered, the constitutional values sought to be protected by holding open proceedings may be satisfied later by making a transcript of the closed proceedings available within a reasonable time, if the judge deter-

mines that disclosure can be accomplished while safeguarding the juror's valid privacy interests. Even then a valid privacy right may rise to a level that part of the transcript should be sealed, or the name of a juror withheld, to protect the person from embarrassment." 464 U.S. at 512, 104 S.Ct. at 825, 78 L.Ed.2d at 640.

We believe these sentiments advocate a course of action designed to limit the detrimental impact on the press and public's right of access at the same time that sensitivity to the legitimate privacy rights of prospective jurors is maintained.

For these reasons the petition for certiorari is granted *pro forma,* and the papers of the case are remanded to the Superior Court with our decision endorsed thereon.

---

**3.** We make no finding concerning the constitutionality of the trial court's actions in this regard because it is unclear from the record whether the transcript of the individual voir dire examination of prospective jurors was made available to the press and public after trial.