DECISION
The issue before the Court relates to the criminal case ofState v. Michael Derderian, case number K1-03-0655A. On February 20, 2003, the Defendant's nightclub, The Station, burned to the ground, killing 100 people. The Defendant was charged with 100 counts of involuntary manslaughter under the criminal negligence theory and 100 counts of involuntary manslaughter under the misdemeanor manslaughter theory.
The Court, the Defense Counsel, and the Attorney General's Office realized that, due to the overwhelming media exposure and the highly controversial nature of this case, many problems would arise in selecting an impartial jury. It was determined that, to assist the parties in this difficult task, the Court should make every effort to obtain as much information as possible about the venire persons prior to trial, including information about their attitudes, opinions and possible prejudices on various topics pertinent to the case, as well as a comprehensive personal history of each prospective juror. To that end, the Court, with input from both parties, developed a 32-page preliminary jury questionnaire in preparation of the voir dire process.
The purpose of the questionnaire was two-fold. First, it was meant to speed up the voir dire process by eliminating days of repetitious questioning, an efficiency the parties considered essential for a trial already scheduled to last numerous months. Second, and more importantly, the questionnaire was meant to elicit candid and complete answers to the questions of counsel and the Court so that the parties could select an impartial jury, despite the fact that most potential jurors would have heard of — and likely have opinions about — the Defendant and the events underlying this case.
On the mornings and afternoons of September 5th and 6th, 421 individuals filled out the questionnaires under the supervision of the Jury Commissioner. The Jury Commissioner returned the filled-in questionnaires to the Court, and the Court made and delivered copies to both parties. By Court order, no one else was given access to these questionnaires. After the State and the Defendant each had an opportunity to review approximately 200 filled-in questionnaires, they each submitted a list of those potential jurors in that group that they hoped the Court would excuse for cause. However, before the Court so excused any individual, before the parties had an opportunity to evaluate the remainder of the jury questionnaires, and before any potential juror was subjected to any in-court questioning, the Defendant changed his plea to nolo contendere on the 100 counts of involuntary manslaughter under the misdemeanor manslaughter theory. On September 29th, this Court accepted the plea and sentenced the Defendant accordingly.
Prior to the Defendant's change of plea, and the imposition of his sentence, the Providence Journal Company ("Petitioner") petitioned this Court to access the preliminary jury questionnaires used in this case. During a telephone conversation on September 6th, a reporter from the Petitioner requested from a representative of this Court a copy of the blank questionnaire. The Court subsequently denied this oral request, suggesting that the Petitioner file an official petition in order to hear the merits of its argument, and to see if either the State or the Defendant objected. On September 11th, the Petitioner filed a miscellaneous petition based on theFirst Amendment right of access to criminal trials. Maintaining that the Court's blanket closure of the juror questionnaire was insufficient under federal and state law, the Petitioner requested copies of the blank questionnaire, the filled-in questionnaires and access "to all proceedings related to jury selection."
The State filed an objection to this miscellaneous petition, arguing that the press' right to access criminal trials is not absolute and should not be granted in this instance. There were two compelling governmental interests which the State said in this case rebutted the presumption of the "openness" of the preliminary juror questionnaires requested by the Petitioner. First, the State argued that government has a legitimate interest in the right of individual privacy as it applies to the potential jurors who filled out the questionnaires. Second, the State reasoned that the government has an interest in upholding theSixth Amendment right to a fair trial as it applies to all
defendants within the criminal justice system, a right that would be infringed if future potential jurors were less forthcoming in their responses to preliminary jury questionnaires for fear of public exposure. The State considered the Court's closure regarding the blank and filled-in questionnaires necessary and
narrowly tailored to protect legitimate governmental interests.
On October 4, 2006, Petitioner responded to the State's objection, as well as to the Defendant's change of plea. After arguing that Defendant's plea removed all Sixth Amendment considerations from the issue at bar, the Petitioner went on to describe what it considered to be, under the relevant case law, the appropriate process for evaluating privacy rights in light of the Petitioner's First Amendment rights. The Petitioner claimed that the prospective juror must first have made an affirmative request for an in camera hearing in order for the Court's closure based on privacy concerns to be proper. Alternatively, the Petitioner claimed that a privacy right only trumps theFirst Amendment right of access to criminal trials when "socially sensitive issues" — such as a history of rape or a racial bias — are raised during the voir dire process. Unaware of any affirmative requests for an in camera hearing or of any socially sensitive issues raised by the jury questionnaire, the Petitioner once again submitted that the information gathered by the Court did not warrant protection from disclosure. Specifically, the Petitioner requested information regarding the prospective jurors' possible acknowledged predispositions or biases in this case, arguing that this in no way should be considered a matter of private concern.
After making the specific findings of fact required under Rhode Island case law, the Court holds today that the Petitioner's motion is denied as to the filled-in questionnaires, but is granted as to a copy of the blank questionnaire, which will be released at the time this decision is entered. Alternatively, the Court holds that, as no juror was called to be orally questioned and no jury was actually seated in this case, the release of the filled-in juror questionnaires serves no legitimate public interest under the First Amendment except to engage in rank speculation or to satisfy idle curiosity about what jurors, if any, may have been seated in this case or what role, if any, the jury questionnaires may have had in the Defendants' motives to change their plea.
 THE PETITIONER'S MOTION IS NOT MOOT
The Court must first determine whether it has jurisdiction over the Petitioner's motion under Article III, § 2 of the United States Constitution. U.S. Const. Art. III, § 2, Cl 1. ("The judicial Power shall extend to all Cases [and] Controversies. . . ."). Although Defendant has changed his plea to nolo contendere and been sentenced accordingly, the Court finds that the issues presented by the Petitioner's motion are not moot.
In order for this Court to hear a case there must be an underlying claim or controversy. Id. Courts generally seal documents or proceedings in order to protect the defendant'sSixth Amendment right to a fair trial. State v. Cianci,469 A.2d 139, 142 (R.I. 1985) (citing Sheppard v. Maxwell,384 U.S. 333, 362 (1966); Estes v. Texas, 381 U.S. 532, 538
(1965)). When a defendant pleads guilty to a charge and is sentenced by the court, Sixth Amendment considerations no longer apply. Id. Once a defendant has pled guilty and been sentenced by a court, the claims of the press to unseal documents are technically moot because the claims are unrelated to an actual controversy. Witt v. Moran, 572 A.2d 261, 264 (R.I. 1990).
However, "a case is not moot if a definite governmental action or policy continues to adversely affect a present interest."Gaynor v. R.I. Dept. of Human Serv., 1993 R.I. Super. LEXIS 30 (R.I.Super.Ct. 1993) (citing Weinstein v. Bradford,423 U.S. 147, 148 (1975)). In other words, review of these motions remains appropriate "when it appears that [a] resolution of the question is in the public interest, as for guidance in future cases, and when the controversy is capable of repetition, yet evades review." Cianci, 496 A.2d at 142 (citing Edward A.Sherman Publishing Co. v. Goldberg, 443 A.2d 1252, 1256 n. 6 (R.I. 1982); Morris v. D'Amario, 416 A.2d 137, 139 (1980)).
In this case, although the Defendant has pled nolo contendere
and been sentenced by the Court, the Press' access to juror questionnaires used in future criminal trials is an ongoing issue of great public interest. The Court is cognizant that its decision today will affect not only the parties to this case, but perhaps also those courts that might develop future juror questionnaires, not to mention the potential jurors who would be asked to fill them out. Additionally, the Court notes that "most challenges to the closure of the individual voir dire examination of prospective jurors will have been rendered moot by the completion of such individual voir dire examination. . . ."Providence Journal Co. v. Superior Court, 593 A.2d 446, 448
(R.I. 1991). If the case were mooted simply because the Defendant pled before this petition reached the Court it is highly likely that this issue would eventually be raised again, and it would be just as likely that it would be dismissed without ever being resolved.
Therefore, mindful of the fact that this decision may guide future cases on this important issue, the Court holds that the motions of the parties are not moot as they concern a governmental action that continues to adversely affect present interests.
 THE FIRST AMENDMENT CREATES A PRESUMPTION OF OPENNESS AND ACCESS TO CRIMINAL TRIALS
The Petitioner contends that the sealing of all of the preliminary jury questionnaires, or the failure of the Court to make specific findings justifying such a closure, is a violation of the Petitioner's right of access to criminal trials under the U.S. and Rhode Island Constitutions, as well as under common law. The Court holds that although the Petitioner has a presumptive right to access jury questionnaires used in criminal trials, that presumption is rebutted by the specific facts of this case.
In this country, and in England before us, public access to criminal trials has historically been regarded as an important aspect of the criminal justice system. Richmond Newspapers v.Va., 448 U.S. 555, 575 (U.S. 1980) (citing 1 Journals 106, 107). The expressly guaranteed freedoms of the First Amendment are meant to assure "freedom of communication on matters relating to the functioning of government." Press-Enterprise Co. v.Superior Court of California, 464 U.S. 501, 517 (U.S. 1984) ("Press-Enterprise I") (citing Richmond Newspapers, Inc.,448 U.S. at 575). It "would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." RichmondNewspapers, Inc., 448 U.S. at 575. Thus, it is well-settled state and federal law that the press and the public have a right to access criminal trials flowing from the "core principles" of the First Amendment. See Press-Enterprise I, 464 U.S. at 517;Providence Journal Co., 593 A.2d at 448 (citing UnitedStates v. Peters, 754 F.2d 753, 758 (7th Cir. 1985)). "What this means in the context of criminal trials is that theFirst Amendment guarantees of speech and press, standing alone, prohibit [the] government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted." Richmond Newspapers, Inc., 448 U.S. at 576.
The Supreme Court has explicitly held that voir dire is part of the criminal trial process and is therefore subject to theFirst Amendment right of access to a criminal trial. ProvidenceJournal Co., 593 A.2d at 448 (citing Press-Enterprise I,464 U.S. 501). Even more pertinent to the Court's decision today, the right of access articulated by the U.S. Supreme Court inPress-Enterprise I has been uniformly applied to preliminary jury questionnaires. See, e.g., United States v. King,140 F.3d 76, 82 (2d Cir. 1998); Cable News Network, Inc. v.United States, 263 U.S. App. D.C. 66 (D.C. Cir. 1987); DaytonNewspapers, Inc. v. United States Dep't of the Navy,109 F. Supp. 2d 768, 772 (D. Ohio 1999); Bellas v. Superior Court,85 Cal. App. 4th 636, 644 (Cal.Ct.App. 2000) (citing LesherCommunications, Inc. v. Superior Court, 224 Cal. App. 3d 774
(Cal.Ct.App. 1990)). Under this reasoning, the Petitioner, as a member of the press and the public, has the presumptive right to access the jury questionnaires filled out in this case.
However, the presumptive right of access to criminal trial information under the First Amendment is not absolute.Providence Journal Co., 593 A.2d at 448 (citingPress-Enterprise I, 464 U.S. 501). To determine whether or not the presumption of "openness" is rebutted, the Court must balance the competing constitutional interests of the defendant's right to a fair trial and the public's right of access to criminal proceedings, as well as the legislatively-created right of privacy in Rhode Island. Id. at 449 (citing Cianci,496 A.2d at 144). When making this determination the Court is cognizant that a juror's right to privacy and a defendant'sSixth Amendment rights are both "subordinate to the First Amendment except in `uniquely compelling' situations." Cianci,496 A.2d at 143 (citing Nebraska Press Asssn. V. Stuart, 427 U.S. 539,570 (1976); Press-Enterprise Co. v. Superior Court, 478 U.S. 1,10 (1986) ("Press-Enterprise II"). Indeed, as the U.S. Supreme Court announced in Press-Enterprise I, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."464 U.S. at 510. (Emphasis added.)
In Cianci, the Rhode Island Supreme Court delineated the process which a trial court must go through when determining whether the presumption of access to criminal trials is rebutted.496 A.2d at 144 (citing Press-Enterprise I,464 U.S. at 511-514). In order for a Rhode Island trial court's closure of criminal trial documents, such as preliminary jury questionnaires, to be considered proper the protective order must (i) be accompanied by the trial justice's specific findings which explain how the order (ii) is narrowly tailored to serve the important government interests sought to be protected, (iii) permits access to those parts of the record that are not deemed sensitive, and (iv) is the only reasonable alternative under the circumstances. Id. This inquiry ensures that the underlying principles of the First Amendment aren't circumvented by the trial court and "minimizes the risk of unnecessary closure."Id.
The Court will now apply this inquiry to the Petitioner's motion regarding the preliminary jury questionnaires filled out for this case.
 THE PRESUMPTION OF OPENESS IS REBUTTED BY THE APPLICATION OF THE CIANCI FOUR-PART INQUIRY
I. The Closure Contemplated By The Court Is Justified By ItsSpecific Findings
The closure contemplated by the Court today is a denial of access to all 421 questionnaires filled-in on September 5th
and 6th. The Court is mindful that such "blanket" closures are generally disapproved of under Rhode Island law. Id. (The "brief inquiry and blanket statement of potential prejudice" of the Cianci Trial Court was insufficient to justify such a closure.) Nevertheless, the Court now makes the specific findings, required by the Cianci four-part inquiry, that demonstrate a compelling reason for such a closure.
II. The Closure Protects Two Important Governmental Interests
The Court holds that the blanket closure of the filled-in questionnaires protects two important and legitimate governmental interests: the right to a fair trial as protected by theSixth Amendment, and the right of privacy as protected by the General Laws of Rhode Island.
a. The Right to a Fair Trial
The first interest is a defendant's Sixth Amendment right to a fair trial. As the court stated in In re South Carolina PressAss'n, "[i]f the voir dire is to serve its function as the safeguard of defendants' Sixth Amendment rights, then clearly candor must be the hallmark of such a proceeding." 946 F.2d 1037,1042 (4th Cir. 1991). Even in instances such as the one at bar, where the Defendant has already pled guilty and his sentence has already been imposed, the public release of personal information gathered from preliminary jury questionnaires would infringe on the Sixth Amendment guarantee to a fair trial by discouraging the required candor essential to the voir dire process.
This Court finds that potential jurors would not respond in a frank and forthright matter to a jury questionnaire if their remarks might later be published in the press. This failure to answer fully and honestly would critically undermine counsels' ability in later cases to select an unbiased jury, as mandated by the Sixth Amendment. Therefore, the Court holds that the right to a fair trial is an important governmental interest and further holds that this right is implicated even where the Defendant has plead guilty and been sentenced, by virtue of the fact that the public disclosure of a preliminary jury questionnaire today will inhibit the full and frank responses from the potential jurors of tomorrow.
b. The Right of Privacy
The second governmental interest the Court seeks to protect with this order is the legislatively created right of privacy extended to the potential jurors in this case. R.I. Gen. Laws 1956 § 9-1-28.1(a)(3) states that "every person in this state shall have a right to privacy," including the "right to be secure from unreasonable publicity given to one's private life." As the U.S. Supreme Court noted, the jury selection process may, in some instances, "give rise to a compelling interest of a prospective juror when interrogation touches on deeply personal matters that person has legitimate reasons for keeping out of the public domain." Press-Enterprise I, 464 U.S. at 511-512. Protecting potential jurors from "post-verdict harassment and invasions of privacy" are therefore legitimate governmental concerns, particularly in cases — like the one at bar — which receive extensive publicity. United States v. Brown, 250 F.3d 907, 921
(5th Cir. 2001) (citations omitted).
This right of privacy is a legitimate governmental concern, even where a potential juror makes no affirmative request to be interrogated in camera regarding matters of a personal nature. Certainly, as the Petitioner noted in its Supplemental Memorandum, Press-Enterprise I requires this affirmative action on the part of individual potential jurors in order to "preserve fairness and at the same time protect legitimate privacy requirement. Id. However, this requirement would only apply "once the general nature of sensitive questions is made known" to the prospective jurors, and when they likewise have an "opportunity to present the problem to the judge in camera but with counsel present and on the record." Id.
In this case, no opportunity to request an in camera hearing was presented to the venire. Prior to handing out the questionnaire, the Court and counsel for the State and the Defendant introduced themselves to each of the four panels brought in on September 5th and 6th. The Court then qualified the jury pool and briefly discussed the jury selection process, including the importance of filling out the questionnaire fully and frankly to the best of each person's ability. After this introduction, the Court and counsel left the courtroom and the Jury Commissioner handed out the questionnaire and supervised the courtroom as the questionnaires were answered en masse.
Moreover, while the Petitioner is correct that the Court should not presume that any of the prospective jurors would have invoked an in camera process if it had been made available, the Court recognizes that neither should it presume a juror would not
have done so if provided the opportunity. In this case, potential jurors were indeed warned that their answers may be made public, but were asked to fill out the questionnaire as completely as they could. Importantly, those potential jurors were each told by this Court that every reasonable effort would be made by the Court to keep their answers private.
The right of privacy is also a legitimate governmental concern, even in cases which request information not considered "socially sensitive," as Petitioner suggests. To begin with, this Court is unclear as is the general state of the law as to what the distinction would be between "socially sensitive" information and "regular" sensitive information. Moreover, the right of privacy in Rhode Island recognizes no such limiting factor, and instead declares something is sensitive if an ordinary person would consider it so. R.I. Gen. Laws 1956 § 9-1-28.1(a)(3)(i)(B) ("The fact which has been made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities.") Nor has any case the Court is aware of ever enunciated such a rule when determining whether the right of privacy rebuts the presumption of access to criminal trials. Indeed, as stated by Press-Enterprises I, the right of privacy extends to all "deeply personal matters that [a] person has legitimate reasons for keeping out of the public domain," which may even include an individual's acknowledged predispositions or biases regarding the case at issue. 464 U.S. at 511-512 (emphasis added). This is of particular concern in The Station fire case, where there remains a strong and strident public discussion regarding the Defendant, his brother, and the tragic underlying events.
The Court holds that the release and publication of sensitive information gathered by a preliminary jury questionnaire may infringe on the Rhode Island right to privacy from unreasonable publicity. Thus, the right of privacy is also a compelling governmental interest which further necessitates a protective order sealing the filled-in jury questionnaires requested by the Petitioner.
III. The Closure Is Narrowly Tailored
Having determined that there are important governmental interests involved in this case, the Court must now fashion its closure order narrowly in relation to those interests. Cianci,496 A.2d at 144. Despite seeking to seal all of the information gathered from the filled-in jury questionnaires, the Court nonetheless holds that this order is as narrowly tailored as it could reasonably be in this case. To determine whether this closure is narrowly tailored, the Court has closely considered the questionnaires under review, and finds that the breadth of the document and the actual answers to the questions therein requires a blanket closure in order to protect the government's legitimate interests.
Due to the extensive publicity and public scrutiny surrounding the underlying case in this instance, the Court, with the input of both parties, has created what it considers to be one of the most far-reaching and comprehensive juror questionnaires ever used in a criminal trial in this state. More questions were asked of the venire by this questionnaire than would ordinarily be asked in a traditional voir dire. In order to ensure the Defendant was granted a fair trial, some of these questions were extremely personal and sensitive in nature. Indeed, the Court considers the vast majority of these questions to be sensitive in nature.[1]
A review of the filled-in questionnaires by the Court has disclosed intensely personal information, including potential jurors' employment, romantic, criminal and medical histories, which the Court finds should not be disclosed to the public in any event. For example, in an attempt to be as forthright as possible with the Court, some potential jurors disclosed, among many other things, that they are adopted or have adopted children, that they have emotional problems (e.g., diagnoses of bipolar, manic depressive, or other mental conditions), that they have relationship or marital problems, that they have been victims of crimes (e.g., arson, robbery or rape), that they are currently on medication (e.g. psychotropic medications such as Prozac) or have surgeries scheduled, or that they are considering looking for a new job. Some jurors even went so far as to make disclosures which might subject them to civil or even criminal penalties. These sensitive disclosures are replete throughout each and every one of these documents, and often appear even where the specific question did not solicit such information.
The Court also notes that many of the questions which solicited such sensitive information are not limited in scope to the individuals responding. These questions ask not only for information about the respondent, but also about the potential juror's close friends and family members. It is one thing to allow the public to access information about the individual who arguably provided it voluntarily, but it is another thing entirely to allow public disclosure of extremely personal information provided about a third party.
Based on the intrusiveness and expansive scope of questions used in this questionnaire, and based on the responses provided, the Court holds that only a blanket closure of the filled-in questionnaires would adequately protect the important governmental interests discussed above. Any less narrow closure would thwart the interests sought to be protected. On the other hand, the blank questionnaire the Petitioner requested contains no sensitive information and therefore, as mandated by Cianci, it will be released at the time of the filing of this decision.
IV. There Are No Reasonable Alternatives To The Closure
Not only must the closure contemplated be narrowly tailored to serve the governmental interests sought to be protected, the Court must also determine whether there are reasonable alternatives which would protect those interests while permitting public access to the non-sensitive parts of the record. Cianci,496 A.2d at 144. Cianci mandates that the Court must implement any such reasonable alternatives if they exist. Id. The Court, however, holds that no such alternative methods are reasonable in this case.
Some appeals courts in other jurisdictions have held that it is reasonable for a trial court to redact the sensitive parts of the record in order to permit the press to access the other portions of the criminal trial documentation, rather than order the entire document or proceeding sealed altogether. See, e.g., UnitedStates v. Edwards, 823 F.2d 111, 120 (5th Cir. 1987); In reSearch Warrants Issued August 29, 1994, 889 F. Supp. 296, 299
(D. Ohio 1995). Indeed, redaction appears to be the alternative method most contemplated by courts in this area.
One method of redaction would be to limit the closure to a specific set of questions. However, this method would not protect the interests involved, because, as mentioned previously, the sensitive information gathered in these questionnaires is not limited to one section, or even a definitive set of questions. Respondents frequently answered multiple questions with sensitive information, even where such information was unexpected and unsolicited. Certainly some questions were more likely to have garnered information which jurors might consider personal, but in practice some of those questions were not answered with any personal information whatsoever. Conversely, some questions unexpectedly elicited very sensitive responses. Not only would a by-the-numbers redaction allow the Petitioner to have access to sensitive information in the questions — negating the point of the closure order — but it would also prohibit the Petitioner's access to some information that the Court would ordinarily not consider sensitive. Thus, for a redaction to be appropriate in this situation the Court would have to go through each of the filled-in questionnaires page-by-page and line-by-line.
In this case the Petitioner has requested access to all 421 questionnaires, each consisting of 32-pages, making for a total of 13,472 pages of answers this Court would need to go through, line-by-line, in order to adequately redact sensitive information. This process would be over burdensome on the Court to say the least, requiring the Court to expend an unreasonable amount of time and effort. Moreover, as the Court has already stated, it considers the vast majority of the information provided in these questionnaires to be sensitive information. Even if the Court were to spend the weeks necessary to properly redact these documents, the Petitioner in the end would likely be left with very little information which may well be of no or very little interest to the Petitioner.[2] Therefore, under the very unusual facts of this case — where so many potential jurors were called and an extensive questionnaire was created by the Court — any request that the Court redact the sensitive information contained within the filled-in questionnaires and release the remainder is unreasonable as determined by this Court as a matter of fact and law.
Other suggestions made by other appeals courts based on similar petitions are likewise unreasonable in the current circumstances. For instance, handling sensitive issues in a sidebar or relying on juror numbers to protect their anonymity are equally unreasonable alternatives in this instance, particularly considering that the Defendant has already been sentenced by this Court. In re South Carolina Press Ass'n, 946 F.2d at 1042. The Court cannot, at this stage of the proceedings, resolve any practical or reasonable alternatives to a blanket closure of the preliminary jury questionnaires. Id. Nor has Petitioner offered any alternatives beyond redaction at this time. As such, the Court finds that no reasonable alternative methods are available which would protect the legitimate interests mentioned above while permitting access to the non-sensitive information within the jury questionnaires.
The Court has found that the closure objected to by the Petitioner is both necessary and narrowly tailored to protect legitimate governmental interests. Additionally, this decision serves as the Court's specific findings of fact necessary to justify this closure. Therefore, the Court holds that the closure contemplated today conforms to the Cianci four-part inquiry and is appropriate in these circumstances.
 ACCESS IS ALSO DENIED BECAUSE NO VOIR DIRE OR IN-COURT QUESTIONING TOOK PLACE IN THIS INSTANCE
Notwithstanding whether the Court's decision today is in compliance with the Cianci four-part inquiry or not, the Court nevertheless denies access to the filled-in questionnaires as no juror was ever called to answer questions in this case. In reaching this decision, the Court agrees with the reasoning ofLesher Communications, Inc., a non-binding California appellate case, which explicitly held that the First Amendment does not mandate disclosure of those answers if a prospective juror is never called to the jury box for oral questioning.224 Cal. App. 3d at 777 (despite First Amendment right of access to criminal trials, publisher was denied access to preliminary jury questionnaires used in a triple homicide case as prospective jurors had not been subject to oral examination).
The Press-Enterprise cases upon which the Petitioner relies rest on the historical and legal conclusion that the public has an interest in open government, including the voir dire process in criminal trials. Id. The First Amendment right to access to criminal trial jury selection exists because the public has a legitimate interest in knowing the bases for each potential juror's ultimate selection or dismissal. Id. The public can only ensure the criminal justice system is functioning properly if it has access to the information the parties used to determine who would or would not make an impartial jury member. Id.
However, "venire-persons who are never called to a jury box do not play any part in the voir dire or the trial." Id. at 779. Instead, they "fill out the questionnaire only as a prelude to their participation in the voir dire." Id. Preliminary jury questionnaires, in and of themselves, serve "no function in the selection of the jury unless the person filling it out is actually called to be orally questioned." Id.
The answers within the jury questionnaires filled out by the 421 Kent County citizens on September 5th and 6th do not in any way indicate what the opinions or biases of the hypothetical jury in this case would have been. There is no indication which — if any — of those potential jurors would have been selected or dismissed prior to or during the voir dire process. Indeed, the voir dire process never began in this case. The Court wishes to make it clear, however, that even if the voir dire process had begun in this case, the only questionnaires subject to the First Amendment right of access would have been those of the individuals actually brought into court for oral questioning. The questionnaires of individuals dismissed for cause prior to voir dire,[3] along with individuals excused once the jury was selected, would not in any way implicate theFirst Amendment right of access to criminal trials.
Moreover, an order preventing access to the jury questionnaires does not wholly abridge the Petitioner's First Amendment rights. The Court's order does not ban interaction with the potential jurors — whose names have already been released to the public. Nor does it prevent the Petitioner from discussing with the State or the Defendant whether or to what extent the jury questionnaires influenced their views of the plea arrangement. Indeed, it would likely be more informative for Petitioner to have those discussions with the parties themselves than to hypothesize based on nothing but the jury questionnaires.
The information Petitioner seeks to access could only engender wild speculation as to the composition and opinions of a hypothetical jury or whether or not the questionnaires moved the Defendants to plead in this case. This speculation would come at the expense of both the potential juror's privacy and the future efficacy of preliminary jury questionnaires as a tool of the criminal justice system. This conjecture would not be helpful to the public, nor is it mandated by the First Amendment. As such, the public's right of access to these questionnaires is clearly outweighed by the privacy and Sixth Amendment rights discussed earlier in this decision. This Court finds that there is no legitimate First Amendment interest in disclosure of filled-out questionnaires unless and until a potential juror is asked questions in oral voir dire hearings. No potential juror was brought in for such oral questioning in this case, and therefore the Court has sealed all 421 filled-in questionnaires from public view, an appropriate order in the circumstances of this case and in light of the Sixth Amendment and privacy rights sought to be protected.
 CONCLUSION
For the foregoing reasons, the Petitioner's motion for access to the filled-in preliminary jury questionnaires is hereby denied. However, the Petitioner's motion as to a copy of the blank questionnaire used in this case is hereby granted. As the Defendant pled guilty and was sentenced in this case prior to any additional voir dire proceedings, the Court does not reach the Petitioner's motions regarding "all proceedings related to jury selection" or the "voir dire of individual prospective jurors."
 JUROR QUESTIONNAIRE
Thank you for coming to court as a potential juror.
Please carefully read the instructions on this page and then complete the following questionnaire. Your answers are important to assist counsel and the Court in selecting a jury for this trial. Complete written answers will save the Court, parties, and prospective jurors a great deal of time. If a question asks you to "please explain," you MUST describe the circumstances, time period, persons involved and their relationship to you, or other details pertaining to your answer. You may not have enough room after the question to provide the best answer. The Court encourages you to use the pages provided at the end of this questionnaire to provide full and complete answers; more detailed answers may avoid further follow-up questions later in the process. Please do not write on the back of any sheet.
It is very important that the answers be yours and yours alone. Please do not discuss the questions with anyone, including other prospective jurors. If you do not know or do not understand a question, please check the "UNSURE" option, where available, and write in the space provided what you do know about the issue or what you think the question may be asking. If no "unsure" option is available, please write "do not understand" or "do not know" next to the question.
You should be aware that your answers to these questions areNOT CONFIDENTIAL, and may be included in the public record or discussed in open court. If in response to ANY of the questions, you do not wish to answer because the issue is too sensitive, personal, or private, please write the word"PRIVATE" in the space after the question and circle theentire question. The Court then may ask you privately about the question if you are called to return.
Remember that there are no "right" or "wrong" answers, only truthful answers. You must sign this questionnaire, and your answers will have the same effect as a statement made under oath to the Court.
 PLEASE PRINT LEGIBLY — PLEASE USE ONLY DARK INK
Thank you for your honest and candid answers.
 Case Background
On February 20, 2003, a fire ignited inside The Station nightclub in West Warwick, Rhode Island. One hundred individuals died in the fire and many more were injured. Three individuals were originally charged with involuntary manslaughter in connection with the deaths: Jeffrey Derderian and Michael Derderian, the nightclub co-owners, and Daniel Biechele, the band manager who lit the pyrotechnics inside the nightclub.
This is the criminal case against one of the owners of The Station nightclub, Michael Derderian. The Honorable Francis J. Darigan will be presiding over this case in the Kent County courthouse. This case has been widely reported in the national and local media; there is nothing wrong with having heard something about this case. It is important to truthfully and fully answer all of the following questions.
PART ONE: CONNECTIONS AND EXPOSURE TO THE STATION FIRE CASE
A. Personal Connections
1. Did anyone you know, or with whom you were acquainted, die orbecome injured in The Station fire?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
2. Do you have a family member or close personal friend whoknows someone who was injured or died in The Station fire, or whoknows any of the victims' family members or the victims' closepersonal friends?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
3. Do you know anyone who was inside The Station nightclub onFebruary 20, 2003, the night of The Station fire?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
4. This trial is expected to last approximately 12-16 weeks,starting on October 3, 2006. Is there anything going on in yourlife or work that would prevent you from giving this case yourfull attention for the duration of the trial?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
5. Do you know or are you acquainted with Michael Derderian orJeffrey Derderian or any of their family and friends?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
6. The following is a list of attorneys who are or have beenrepresenting persons associated with the case against MichaelDerderian. Do you, or does any member of your immediate family,know or have any connection (personal, business, or social) withany attorney, employee, or associate of: (Check ALL that apply)
 Thomas G. Briody Richard Egbert John "Terry" MacFadyen Jeffrey Pine Peter DiBiase Thomas Dickinson Kathleen Hagerty Anthony Cardinale Randall White William Ferland Christopher Bush
For each person checked, please explain how you know that person or what you have heard about that person:_______________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
7. Do you know anyone who works for or at the following lawfirms?
 (Check ALL that apply)
 The Law Offices of Thomas G. Briody Flaherty Lawrence
 The Law Offices of Anthony M. Cardinale The Law Offices of Peter DiBiase
 The Law Offices of Thomas Dickinson The Law Offices of Jeffrey B. Pine
 The Law Offices of Richard M. Egbert MacFadyen, Gescheidt O'Brien

For each checked item, please specify who you know, how you know them, and briefly describe their job: ______________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
8. Do you know anyone who works for or at the following agenciesor entities?
 (Check ALL that apply)
 Town of West Warwick Rhode Island Judiciary (e.g., courts)
 Rhode Island State Police Rhode Island Attorney General's Office
 Rhode Island Department of Corrections State of Rhode Island

For each checked item, please specify who you know, how you know them, and briefly describe their job: ______________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
9. Are you personally acquainted with the Judge presiding overthis case, Honorable Justice Francis J. Darigan, his family, orthe members of his immediate staff?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
10. Are you personally acquainted with Attorney General PatrickLynch, his family, or the members of his immediate staff?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
11. Did you, your family, or close friends participate in any ofthe following activities related to The Station fire? (Check ALL that apply)
 Myself Friend/ Neither
 Family
 A. Rescue efforts made on the night February 20, 2003
 (including firefighting, police, and other efforts) 
 -------------------------------------------------------------------------------------------
 B. Medical treatment of victims 
 -------------------------------------------------------------------------------------------
 C. Demolition or site clean-up 
 -------------------------------------------------------------------------------------------
 D. Media reporting of The Station fire and/or related
 events 
 -------------------------------------------------------------------------------------------
 E. Funeral or memorial services for anyone who died in
 the fire (including attending any such services) 
 -------------------------------------------------------------------------------------------
 F. Fund-raising or support efforts for The Station fire
 victims, survivors, and/or their families, including
 contributions to The Station Family Fund, The Station
 Fire Memorial Foundation, the WHJY "Doc" Fund, or 
 other charitable relief relating to The Station fire
 -------------------------------------------------------------------------------------------
 G. Fundraising events or support activities for Michael
 Derderian or Jeffrey Derderian 
 -------------------------------------------------------------------------------------------
 H. Called a radio station or wrote to a newspaper to
 comment on an issue related to The Station fire 
 -------------------------------------------------------------------------------------------
 I. Posted comments or blogs on the internet regarding
 issues related to The Station fire 
 -------------------------------------------------------------------------------------------
 J. In any way participated in the building or fire code
 inspection of The Station nightclub 
 -------------------------------------------------------------------------------------------
 K. In any way participated in the investigation after The
 Station fire 
 -------------------------------------------------------------------------------------------
 L. Were present at The Station site or surrounding
 buildings during or immediately after the fire 
 -------------------------------------------------------------------------------------------

For each item checked, please describe the involvement and those involved to the best of your abilities: ______________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
12. Do you know, or have you ever been acquainted with, any ofthe following individuals or their family members? (Check ALL that apply) Please note persons included in the list are not necessarily victims of the fire or in any way injured. Please read every name in each column and carefully consider if you know or knew the individual.
Last Name, First Name
 Adams, Sandra Alberghini, Jon W., Jr. Alves, Louis S. Amato, Kerrie Anderson, Kevin P. Andrade, Bethany Andrade, Joseph Angers, Stacie J. Arpin, John R. Arruda, Christopher G. Arruda, Elizabeth Arruda, Kristen L. Ashley, William Avilez, Eugene M. Ayer, Tina M. Bagtaz, Karla J. Baker, Mary H. Ballard, Craig Bannister, Shawn L. Barak, Ron Barber, David Barber, Joseph P. Barber, Kevin Barlow, Robert A., Jr. Barnett, Thomas A. Barr, Philip B., Jr. Beauchaine, Laureen M. Beauchaine, Raymond F. Jr. Beers, Kerrie L. Beese, Kevin J., Sr. Beineke, Gary M. Beineke, Pamela J. Belson, Julie Bernard, Jacqueline M. "Jackie" Bertolo, Paul Bettencourt, Anthony Biechele, Daniel M. Blacklock, Christopher T. Blevins, Marc S. Blom, Kevin D. Blom, Steven T. Boerger, Paul T. Bolarinho, Luis Bonardi, William C. III Botelho, Jesse Bowe, Kevin M. Braga, Paul Brennan, David Brennan, Jonathan P. Brodeur, Robert A., Jr. Brown, Kristen Bruno, Stephen Buchka, Katrina Bump, Melissa Burgess, Steven Butler, Brian Cabral, Richard A., Jr. Cambio, Albert Campagnone, Kenneth R. Canillas, Francis J. Carbone, Kristine M. Cardillo, Kathleen M. Cardillo, Mario B., Jr. Carignan, Catherine Carpenter, Walter Carr, Michael S. Cartwright, William H. Castle, Walter F., Jr. Chalifoux, Steve J. Chamberlin, Susan Chappell, Mary Chappell, William E. Chareste, Michael Chibante, Paulo Choquette, Jennifer M. Christensen, Peter L. Ciccone, David Clabots, Evan E.G. Clark, Jordan Clarke, Patricia Companatico, Gennaro Conant, Nicole Conant, Stephanie Conte, Thomas A. Conway, Arthur J. III Cook, Richard, Jr. Cooley, Jason L. Corbett, Edward B. III Cordier, Michael E.
 Corey, David M. Cormier, Brenda L. Cormier, Bruce E. Cormier, Donna Cormier, Timothy B. Costa, Christopher Cripe, Robert M. Crisostomi, Alfred C. Cristina, Joseph A. Cronin, Neil E. Croteau, Robert J. Cugini, Anthony Cummings, Timothy Curtin, John Cushman, Robert A. D'Andrea, Lisa M. Darby, Matthew P. Davide, Shawn Davidson, Daniel Dawson, Erick Dawson, Scott Decesare, Amanda DeGregorio, Carissa DeLaRoca, Phillip Dell, Shauna Delsanto, Richard S. Delsesto, Cara A. Delsesto, Lisa A. DeMaio, Dina A. Demos, Jose R. Denno, Tammy Derderian, Jeffrey A. Diamonte, Dennis E. DiBona, Joseph DiBonaventura, Albert A. Dimeo, John Dinger, Seth M. Dionne, George DiOrio, Gilbert DiRienzo, Christina A. DuFosse, Paul W. Dufour, Gregory S. Dufour, Richard, Jr. Dufresne, James J. Dunbar, Scott Dunn, Kevin J. Durante, Lori K. Dussault, Matthew J. Eldridge, Stephen J. Embelton, Shane M. Ervanian, Edward E. Esposito, Salvatore Fairbairn, Andrea Fairbairn, John Fanale, David J. Feeney, Robert P. Ferreira, Barry Ferreira, Joseph (Jose) Ferreira, Joseph J. Filice, David M. Fisher, Linda M. Fitzpatrick, Michael Fleck, Ryan Fleming, Thomas J. Florio, Adam M. Florio-DePietro, Rachael K. Flynn, Joseph Fontaine, Craig Fontaine, Mark A. Fontaine, Melanie Fravala, Brandon L. Fredrickson, Daniel J. Fresolo, Michael A. Gahan, James C., IV Garcia, Jeannette E. Gately, Jeremy Gates, Jay W. Gaumitz, Rodney J. Gauvin, Gina M. Gaven, Julianna Gerfin, Melvin A., Jr. Gershelis, Irina M. Giamei, Mario, Jr. Gibbs, John Gilbert, Richard Gillett, Laura Gingras-Fick, Charline E. Giroux-Brown, Geogette R. Goguen, Eugene, Jr. "Geno" Gonsalves, Michael J. Gooden, James F. Gordon, Donald Gordon, Karen M. Gordon, Paul R. Gould, Paula Grace, Richard J. Graham, Steven Gray, Derek J. Gray, Gregory W. Greenan, Thomas Greene, Laura Greene, Skott Griffith, Scott S. Gruttadauria, Pamela A. Guindon, George Hagen, Julie Hale, Lisa C. Hall, Grant A. Hamelin, Bonnie L. Hardee, Anne Hargreaves, Jason Harrington, Robert H. Henault, Jude Herchen, Kevin P. Hoban, Andrew R. Hoisington, Abbie L. Holliday, Melanie Hoogasian, Michael B. Hoogasian, Sandy Horan, Sean P. Horan, Shamus D. Howorth, Carlton L. III "Bud" Huscher, Kevin W. Hussey, Laurie Hyer, Eric J. Iannone, Michael Innamorati, Donna James, Alison L. Jandron, Michael Johnson, Derek B. Johnson, Glenn B. Johnson, John Johnson, Lisa Jones, Joseph
 Joseph, Alana Joseph, Andon P. Kaczmarczyk, Michael Karvonen, Lee Kelly, John J. Kelly, Lisa J. Kelly, Tawnya Kendall, Mark S. Kinan, Joseph King, Todd D. King-O'Toole, Teresa King, Tracy F. Knott, Mark Kolasa, Anthony Kozik, Katherine Krasinskas, Adrian R. Kudryk, John E. Kulz, Michael J. Labree, Theresia Lapierre, Keith R. Latulippe, Dale L. Lemay, Deborah N. Letourneau, Karl Leveille, Arnold H., Jr. Levesque, Frederick Libera, Stephen M. LoBianco, Joseph J. Long, William D. Longiaru, John M. Longley, Ty C. Lourenco, Shawn Lucier, Marc Lusardi, Joseph A. Luxton, Robert J. Lynch, John E. Lyons, Sandra J. MacDonald, David B. Magee, Michael F. Mahoney, Steven Malagrino, David J. Malardo, Eric B. Malardo, Michelle L. Malinowski, Jill Mallette, Matthew Mancini, Andrea L. Mancini, Keith A. Mancini, Steven Mangan, John, Jr. Manzo, Judith I. Marion, Thomas F., Jr. Mariorenzi, Kenneth Martin, Jeffrey W. Matterra-Housa, Tammy McGinn, David McMurray Frances P. McNamara, Colleen McNamara, Paul K., Jr. McNamara, Sean P. McNulty, John T. IV McQuarrie, Kristen L. Medeiros, Thomas P. Mellini, Julie A. Miceli, Samuel J., Jr. Mignacca, Richard M. Miller, Samuel Mills, Todd Minor, Melissa J., "Missy" Mitchell, Donna M. Moone, Jason Moore, Carolyn A. Moreau, Leigh A. Moresco, Scott C. Morin, Ryan M. Morrison, Wayne T. Morton, Jason R. Mosczynski, Elizabeth E. Nadeau, Jason R. Napolitano, Kimberly A. Napolitano, Stephanie R. Nobles, Cynthia Nobles, Edward D., Jr. Norbega, Ann Nordgren, Russell E. Nowicki, Christopher Noyes, Nancy E. O'Berg, Charles O'Brien, Michelle O'Donnell, Brian O'Donnell, Katherine O'Donnell, Shawn O'Melia, Roberta L. O'Neil, Michael O'Neill, Nicholas P. O'Neil, William Ochs, Angela C. Ochs, Chad E. Ormerod, Linda A. Panciera, Harold T., III Paskowski, Andrew Passa, Tammy M. Peduzzi, Deborah Pelletier, Paul J. Perreault, Michael Perry, Anthony J. "Tony" Perry, Dawn Perry, Stephen Petrarca, Robin M. Petrin, Jonathan Pezzelli, Edward, Jr. Pezzelli, Paul M. Phillips, Kimberly G. Pickett, Matthew J. Pimentel, Carlos L., Sr. Pinkham, John Piscopio, Jason Poland, Ashley A. Pomfret, Hollie Pomfret, Justin Potter, Christopher C. Potvin, Victoria L. Powers, Eric Precourt, Robin Prete, Roberta J. Preuit, Scott M. Prouty, Christopher Prudhomme, Albert A., Jr. Prudhomme, Charlene L. Prunier, Cathren M. Pucino, Erin M. Pulley, Kevin Quarry, Brianna N. Quoria, Vincent Rader, Jeffrey S. Rager, Robert W. Rakoski, Theresa L. (Serpa)
 Travis, Christopher J. Tremblay, Gary M. Trudeau, Donald N. Tucker, Gerald W. Vallante, Frederick P., Jr. Van Deusen, John F., III Vanner, Paul Vargas, Raul M. Vieira, Jennifer Vieira, Kelly L. Vieira, Scott Vocaturea, Peter J. Wagner, Debra Waldeck, Scott H.G. Ward, Jeff Washburn, Kevin R. Whalen, Erin J. Wigginton, John D. Wiggs, Richard E., III Wilk, Brian Williams, Donovan P. Williams, Eric Williams, Jason T. Williams, Mark Wilson, Sharon A. Wincze, Brent Wood, Jessica Woodmansee, Everett T., III Young, Robert D. Zanfagna, Arthur Zannella, Stephanie Zeringue, Larry J.
For each person checked, please explain how you know the person and your past and current contact with him or her: __________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ More than one person often has the same first and last name, and sometimes even the same middle initial. For each person checked, please also estimate the age of the checked person and include any other identifying information about the person you know: _____________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
13. Do you know or are you acquainted with any of the following individuals? (Check ALL that apply)
 Last Name, First Name Amato, Joseph Antonelli, Richard Arnold, Timothy Ayotte, James Azverde, Keith Baker, Alan Barber, Kathy Bardsley, Douglas Bettencourt, Anthony Botello, John Brayman, David Brousseau, Peter Brown, Aaron Brown, Thomas Bryant, Tim Burns, James Carolan, MaryJo Clark, Joseph Clayton, David Conca, Raymond Conti, Robert Conti, Nathan Cook, Lewis Cote, Christopher Coutu, Roland Custodio, Chad Davis, Jeff Dean, Paul DeDentro, Daniel DelSignore, Joseph DerManouelian, Aram DiCapua, John Dillon, Scott DiMascolo, Michael DiMasi, Jeanne Marie Doherty, Edward Ducharme, Edward Dunham, Dennis Ellard, Edward Ellis, Robert Frazier, Barbara Frey, Jay Gaumond, Scott Glover, L.D. Goodinson, Ronald Goodson, Thomas Goulet, Stephen Grasso, Robert Gray, Alexander Greene, Jason Greene, Steven Grinter, Randy (a/k/a Jon) Hall, Charles Hall, Virginia Hendershot, Brian Hendershot, Kenneth Hodge, Dorothy Hoogerzeil, Peter Howe, William James, Richard Julian, Howard Kay, Christopher Killian, John Koehler, Clifford LaChance, John LaFontaine, Joseph Laposata, Elizabeth Larocque, Dennis Lewis, Stephen Lumley, Gary Lynville, Will Machado, Armando Malanga, Robert Martin, John Marion, Michael Matteos, Stephen McAllister, Paul McClusky, David Scott McCrudden, Brian McDonough, William McNally, Jeffrey Medeiros, Michael Mellini, John Mikutowicz, Michael Monaghen, Leslie Mowry, Robert Murley, Norman Murray, Stephen Muto, John Myers, Timothy Nichols, Robert O'Connor, Michael Olerio, Corey Parsons, James Pate, Steven Payette, Michael Payne, Michael Payton, Jennifer Peiczarek, John Pereira, James Pickett, John Pickett, Joseph Porrecca, Christopher Ramsey, Richard Raposa, Christopher Rita, Richard Rollo, Patrick Russell, James Sands, Sean Santana, Domenic Santoro, Timothy Schroeder, Robert Shaw, Steven St. Jean, Roger
 Stasiowski, Ricky Steinman, Obi Stepinski, Charles Stephens, Jay Stevens, Bryan Studley, Jessica Tiernan, James Tyler, John Valley, Robert Vanini, Stephen Vierra, Shawn Warner, Barry West, Leslie Woitasek, Steve Woolnaugh, Paul Xenopoulos, Peter Zickerman, Joseph
For each person checked, please explain how you know the person and your past and current contact with him or her: __________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ More than one person often has the same first and last name, and sometimes even the same middle initial. For each person checked, please also estimate the age of the checked person and include any other identifying information about the person you know: _____________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
14. Please read the following list of companies carefully:
• American Foam Company (Johnston) • Anheuser-Busch, Inc. • Foamex • WPRI-TV (Channel 12 — Providence) • Richmond Auto Wash, LLC. • Triton Realty, Inc. • WHDH-TV (Channel 7 — Boston) • McLaughlin Moran • Triton Realty, LLP. • Ashley and Alec Inc. • Leggett and Platt • Main Street Management Company • Insurance Investors Service Group • Derco, LLC. • Clear Channel Communications/WHJY-FM (94.1 — Providence)
(a) Do you know anyone who works at any of the abovecompanies?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
(b) Do you have a financial interest in any of thesebusinesses, including ownership of stocks?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
15. Civil lawsuits have arisen from the personal injuries anddeaths resulting from The Station fire.
(a) Do you know anyone who was or is in any way involved inthose lawsuits?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
(b) Do you know or are you acquainted with any attorneys thatare or were involved in those civil lawsuits?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
16. The Station nightclub was located at 211 Cowesett Avenue.Had you ever been to The Station nightclub prior to the fire, orany bar, restaurant, or facility located at 211 Cowesett Avenuein West Warwick (including the "Filling Station" or "CrackerJacks")?
 NO YES UNSURE
If YES, please describe your visit(s), including when and for what purpose you went, or if UNSURE, please explain:_________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
17. Have you ever worked or known anyone who worked at TheStation nightclub?
 NO YES UNSURE
If YES, please state relationship and dates of employment, orUNSURE please explain:________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
18. After February 20, 2003, have you ever driven past orotherwise been to the place where The Station nightclub used tobe located?
 NO YES UNSURE
If YES, please state when and for what you went to the site, or if UNSURE, please explain:____ __________________________________________________________________________ __________________________________________________________________________
19. Do you know anyone else who was called as a potential jurorfor this case?
 NO YES UNSURE
If YES please state the name of the person and describe your relationship with them, or if UNSURE, please explain: ________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
B. Exposure to The Station fire case
20. Before coming here today, had you read, seen, or heard ofanything about the criminal charges related to The Station fire,including those charges brought against Michael Derderian, one ofThe Station nightclub owners?
 NO YES UNSURE
If NO, please skip to question 21. If YES please continue. If UNSURE, please explain and then continue to subpart (a): __________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
 (a) How much have you heard about the criminal case against Michael Derderian?
 A lot Some A little
 (b) How closely have followed the news about this case?
 Very closely Somewhat closely Not closely Not at all
 (c) Please indicate the source(s) from which you heard about the case.
 (Check ALL that apply)
 Televison Newspapers Radio Magazines Books Internet
 Present during related court proceedings
 Talked with the accused, some of his family, friends, or his associates
 Talked with the victims, some of their family, friends, or their associates
 Talked with other people about the case
 Overheard others talking about the case
 Other sources (please list):________________________________________________
 (d) Summarize what you have heard about this case:___________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 (e) What have you heard about Michael Derderian?
___________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 (f) What are your thoughts and opinions about this case, if any? ________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 (g) What are your thoughts and opinions about Michael Derderian, if any?________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 (h) How often have you discussed this case with others?
 Frequently Occasionally Rarely Not at all
 If FREQUENTLY, OCCASSIONALLY, or RARELY, please summarize what you have talked about:_____________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 (i) Have you ever expressed an opinion about this case? YES NO
 If YES, please summarize what you said, and where and to whom it was said:____________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 (j) Based on what you have heard, seen, read, and discussed about this case, do you believe that Michael Derderian is definitely guilty, probably guilty, probably not guilty, definitely not guilty, or have no opinion?
 Definitely Guilty Probably Guilty No opinion
 Probably Not Definitely Not Guilty
 Please explain why you feel that way:_________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 (k) Based on what you have heard, seen, read, and discussed about this case, do you believe that anyone in addition to the three original Defendants should have been charged in connection with The Station fire?
 NO YES UNSURE
 If YES or UNSURE, please explain: __________________________________________ ________________________________________________________________________ ________________________________________________________________________
 If YES or UNSURE, would your feeling that there should have been charges brought against additional people affect your opinion in the case against Michael Derderian? (please explain):__________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 (l) Have you heard anything regarding the role of fire officials, fire marshals, or fire inspectors in The Station fire?
 NO YES UNSURE
 If UNSURE, please explain. If YES, please describe what you have heard:___________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
 If YES or UNSURE, what are your thoughts or feelings about the role of the fire officials, fire marshals, or fire inspectors in The Station fire?_______________________ ________________________________________________________________________ ________________________________________________________________________
C. Personal Opinions and Feelings about Issues in this Case
21. One of the original defendants, Daniel Biechele, has pledguilty. The remaining defendants, Michael Derderian and JeffreyDerderian, are being tried separately. This trial only involvesDefendant Michael Derderian. Would the fact that MichaelDerderian is the only defendant in the trial have any influencewhatsoever on your decision in this case?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
22. What are your thoughts, if any, about Daniel Biechele, hisplea, and the sentence he received for his role in The Stationfire? __________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
23. Do you feel that the deaths and injuries arising out of TheStation fire have affected you in any way?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
24. Is there any reason you WOULD NOT want to be a juroron this case?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
25. Is there any reason you WOULD want to be a juror on thiscase?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
26. If you are selected as a juror in this case, would you beable to refrain from reading about, listening to, or watching anyprint, electronic media, or internet coverage of this case?
 NO YES UNSURE
If NO or UNSURE, please explain: _________________________________________________ __________________________________________________________________________ __________________________________________________________________________
27. If selected as a juror, you will be required to refrain fromindependently researching any issue of law or fact that arises inthis case. Will you be able to refrain from such research?
 NO YES UNSURE
If NO or UNSURE, please explain: _________________________________________________ __________________________________________________________________________ __________________________________________________________________________
28. Do you believe that it is a business owner's responsibilityto comply with all fire and safety codes within their place ofbusiness?
 NO YES UNSURE
For ALL ANSWERS please explain:________________________________________________ __________________________________________________________________________ __________________________________________________________________________
29. Do you believe anyone in addition to a business owner isresponsible for ensuring that fire and safety codes are followedwithin a business open to the public?
 NO YES UNSURE
If YES or UNSURE, please explain who else might be responsible and why: ________________ __________________________________________________________________________ __________________________________________________________________________
30. Do you have any feelings about the criminal prosecution ofbusiness owners for violations of safety regulations which leadto death or serious injury of people?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
31. Do you have any feelings toward either party that wouldprevent you from serving as a fair and impartial juror in thiscase?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
PART TWO: SPECIFIC EXPERIENCES OF PROSPECTIVE JURORS
32. How long have you lived in RhodeIsland?________________________________
33. Where were you (city/state) born? ____________________raised?_________________
34. Is your home or work located, or has your work or home everbeen located, close to The Station fire site?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
35. Have you, your family, or close friends been affected by anytype of fire?
 NO YES UNSURE
If YES, please describe the fire(s), the damage (if any), and those involved, if UNSURE, please explain:__________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
36. Has anyone you know ever died or become injured in any typeof fire?
 NO YES UNSURE
If YES or UNSURE, please explain:________________________________________________ __________________________________________________________________________ __________________________________________________________________________
37. Do you have any knowledge, familiarity or experience withpolyurethane foam or other foam products, such as packaging,sound deadening, or bedding material?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
38. Have you heard anything about the properties of polyurethanefoam or other foam products as they relate to flammability orreaction to fire?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
39. Have you been to a nightclub or a small indoor establishmentwhere pyrotechnics or open flame special effects were used?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ ________________________________________________________________ ________________________________________________________________
40. How often do you go to nightclubs, taverns, or bars?
 Daily Weekly Monthly A few times a year Have never been Have not been in the past year Other_____
41. Have you ever personally used any type of fireworks for anyreason?
 NO YES UNSURE
If YES, please describe the type of fireworks and occasion and circumstances surrounding the use, or if UNSURE, please explain: _________________________________________________ __________________________________________________________________________ __________________________________________________________________________
42. Have you had any education, training, or experience with theuse or handling of the following materials? (Check ALL that apply)
 Pyrotechnic devices (e.g., gerbs, flash pots, fountains) Explosives Fireworks
 Hazardous materials Spray Adhesives

For each item checked, please explain the education, training, or experience: ________________ __________________________________________________________________________ __________________________________________________________________________
43. Are you familiar with, or have you worked in any way with,material safety data sheets (MSDS), otherwise known as productsafety information sheets?
 NO YES UNSURE
If YES or UNSURE, please explain: ___________________________________ __________________________________________________________________________ __________________________________________________________________________
44. Have you ever owned your own business?
 NO YES (Type of business:__________________________________
 Dates of ownership:______________ Number of employees:_________).

45. Have you, your family, or close friends had any of thefollowing experiences?
 (Check ALL that apply)
 Myself Friend/Family Neither
A. Worked or trained in the music performance or music 
business?
______________________________________________________________________________________________________
B. Worked or trained in small theatrical or other 
entertainment performances?
______________________________________________________________________________________________________
C. Worked or trained in a music studio, have a home music 
studio, or have a home video recording studio?
______________________________________________________________________________________________________
D. Owned a nightclub, bar, tavern, or restaurant? 
______________________________________________________________________________________________________
E. Worked or trained in a nightclub, tavern, bar or 
restaurant?
______________________________________________________________________________________________________
F. Worked or trained in fire safety training or fire fighting? 
______________________________________________________________________________________________________
G. Worked or trained in the legal or paralegal field? 
______________________________________________________________________________________________________
 ______________________________________________________________________________________________
 H. Worked or trained in news media? 
 ______________________________________________________________________________________________

For each Myself and Friend/Family marked, please explain the circumstances and if applicable, your relationship with the individuals involved: _____________________________________________ __________________________________________________________________________ __________________________________________________________________________
46. Have you, your family, or close friends ever been employed in any of the following capacities? (Check ALL that apply)
 Myself Friend/ Neither
 Family
 A. Been employed by a prosecutor, in a prosecutor's office,
 attorney general's office, or any investigator working for a 
 prosecutor or prosecutor's office?
 ______________________________________________________________________________________________
 B. Been employed by a defense attorney, a law firm with
 defense attorneys, a public defender's office or any
 investigator working for a defense attorney, firm, or office? 
 ______________________________________________________________________________________________
 C. Been employed by a federal or state investigative agency,
 corrections agency, or court? 
 ______________________________________________________________________________________________

For each Myself and Friend/Family marked, please explain the circumstances and if applicable, your relationship with the individuals involved: _____________________________________________ __________________________________________________________________________ __________________________________________________________________________
47. Please indicate if the following statements are True orFalse, and explain where provided:
 A. I have heard about, or am familiar with, building and/or fire codes. True False
 If TRUE, describe what you know/think about fire codes: ____________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
 B. I have filed for a building or special use permit, variance, or other permit from a
 federal, state, or local governmental agency. True False
 If TRUE, explain circumstances: ____________________________________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
 C. I have been involved in some way with seeking an inspection or having an inspection
 conducted by a fire marshal or building inspector at my home, construction site,
 workplace, or in some other situation. True False
 If TRUE, explain circumstances: ____________________________________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
 D. I have worked at a business that has been cited for violations of a building or fire
 safety code. True False
 If TRUE, explain circumstances:_____________________________________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
 E. I have been in a situation where a fire or building inspector detected code violations
 or problems and informed me of those violations or problems. True False
 If TRUE, explain circumstances: ____________________________________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
 F. I have had an unsatisfactory experience with a building inspector or fire marshal.
 True False If TRUE, explain the circumstances:______________________________________
 ____________________________________________________________________________________________
 ____________________________________________________________________________________________
PART THREE: GENERAL INFORMATION ABOUT PROSPECTIVE JURORS
48. Do you have any trouble reading or understanding English?
 NO YES UNSURE
If YES or UNSURE, please explain: ______________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
49. Do you have any physical difficulties (such as hearing orsight), medical difficulties, mental difficulties or emotionaldifficulties that would interfere with your ability to be anattentive juror?
 NO YES UNSURE
If YES or UNSURE, please explain: ______________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
50. Are you taking any medicine that could affect your abilityto serve as a juror?
 NO YES UNSURE
If YES or UNSURE, please explain: ______________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
51. Please provide the following biographical information:
 A. How old are you?______________
 B. Are you: Male Female
 C. Are you currently (please check the one that best describes you):
 Married (number of years________) Single — Widow/Widower
 Married, currently separated Single — Divorced
 Unmarried, living with partner Single — never married.
 Other (please describe)_________________________________
 D. What is your current address (including City/State)?______
 _______________________________________________________________________
 E. How long have you lived at your current address?__________
 F. Have you ever sought or filed a claim for worker's compensation or disability?
 NO YES UNSURE
 If YES or UNSURE, please explain: ___________________________________________________
 _____________________________________________________________________________________
 G. Have you ever served in the armed forces? YES NO
 If YES, please state:
 a. Branch of service:_______________________________
 b. Date(s) of service:_______________________________
 c. Highest rank attained:____________________________
 d. Were you ever a member of the military police or shore patrol? YES NO
 e. What type of discharge did you receive?______________

52. Do you currently:
 Own your own home, condominium, or residence Rent or lease your residence
 Live with friends Live with relatives

53. With whom do you live? (Check ALL that apply)
 Spouse/partner Children Parents Other relatives Roommate(s)
 Friends Live Alone Other (describe)______________

54. Do you have any children or stepchildren?
 NO YES All Children deceased
If YES, please list the following information for each living child:
 Age Sex Education Occupation Live with you?
1. YES/NO
2. YES/NO
3. YES/NO
4. YES/NO
5. YES/NO

55. What are, or what were, your parents' and/or step-parents'occupations?
 Mother______________________ Step-mother________________________ Father______________________ Step-father _______________________
56. Check the highest level of education for you and your spouseor partner (if applicable):
 Myself My Spouse/ Partner
 A. Grade school or middle school B. Some high school C. High school graduate D. GED E. Some Trade or Technical school F. Completed Trade or Technical school G. Some College H. Two-year college graduate I. Four-year college graduate J. Some post graduate work K. Post graduate degree 
If schooling is beyond high school, please list the study and degrees earned or are in the process of being earned:
a. Self____________________________________________________________________ ________________________________________________________________________
b. My spouse/partner_________________________________________________________ _______________________________________________________________________
57. Are you presently: (Check ALL that apply)
 Employed full time Employed part time Self-employed
 Currently unemployed Disabled Retired A homemaker A student

Please list the following information about your current ormost recent employment:
A. Name, location, and description of the business where you are, or were most recently, employed:____________________________________________________________ _____________________________________________________________________
B. Job title and duties: _____________________________________________________ ________________________________________________________________________
C. Dates of employment: __________________________________________________
58. Please list the three most recent jobs you have held, ifany, other than the one listed above:
Employer Job Duties Approximate Beginning/End Times
1.____________________________________________________________________________
2.____________________________________________________________________________
3. ____________________________________________________________________________

59. If you are married or living with a partner, please supplythe following information about that person: Not married/not living with partner (skip to question 60)
My spouse/partner is:
 Employed Unemployed Retired Student Homemaker Disabled
Please list the name and location of the most recent employer of your spouse/partner, and his or her job title and duties at their most recent employment: ________________________________ _________________________________________________________________________ _________________________________________________________________________
60. Have you or your spouse or partner had any education,training, or experience in the following areas?
 Myself My Spouse/ Neither
 Partner
 A. Accounting or bookkeeping 
 B. Business Administration/Management 
 C. Computer Science 
 D. Law enforcement or criminal justice 
 E. Medicine 
 F. Real estate 
 G. Chemistry 
 H. Engineering 
 I. Carpentry 
 J. Compliance with federal, state, or local 
 regulations.
 K. Workplace safety rules and regulations 
 L. Anything related to building or fire codes. 
 M. Firefighting, rescue squad, or emergency 
 medicine
 N. Insurance claims or adjusting 
 O. Private Investigations 
 P. Security/Security Guard 
 Q. Human resources/employee relations 
 R. Supervising employees 
 S. Property Management or Landlord Role 
 T. Psychology, psychiatry, or counseling 

Please describe the education, training, or experience you and/or your spouse or partner had in all the areas you checked: ________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________
61. Do you keep up with local/state news? YES NO (IfNO, go to question 62)
 A. If YES, which source do you rely on for news?
(Check ALL that apply)
 Newspaper Television Radio Internet Other:________________
 B. If you read the newspaper, which section(s) do you read? (Check ALL that apply)
 Front page Local/METRO Sports Business Editorial Entertainment
 Do not read the newspaper Other:_____________________________
 C. If you watch the news on TV, which stations do you watch? (Check ALL that apply) Do not watch news on TV ABC CBS NBC FOX
 CNN/MSNBC Public Television Other:____________________
 D. If you listen to the news on the radio, which station(s) do you listen to:_________ _____________________________________________________________________
62. Do you read any newspapers or magazines?
 NO YES UNSURE
If YES, please list, if UNSURE, please explain:_______________________________________ _________________________________________________________________________ _________________________________________________________________________
63. Do you listen to any radio or television talk shows?
 NO YES UNSURE
If YES, please list, if UNSURE, please explain: _______________________________________ _________________________________________________________________________ _________________________________________________________________________
64. Do you have access to the internet? (Check ALL that apply)
 No access to regular internet use Internet access at home
 Internet access at work Internet access at homes of friends/family
 Use internet access in library OTHER, use internet access in ______________

65. How often do you use the internet?
 Never A few times a month Weekly A few times a week Every day

66. Please list any bumper stickers or decals, if any, that youhave on any vehicle you own or drive (excluding those required bya county, city or the State of Rhode Island):________ _________________________________________________________________________
67. Please list any clubs or organizations to which you and yourspouse/partner belong or participate (including civic, social,charitable volunteer, political, sporting, professional,business, recreational, and other groups):
a. Self: _______________________________________________________________________ _______________________________________________________________________
b. My Spouse/Parner__________________________________________________________ _______________________________________________________________________
68. Have you ever held office or title in the organizationslisted above?
 NO YES Did not list any organizations above UNSURE

If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
69. Have you, or your spouse or partner, ever participated in,donated to, or otherwise been associated with a victim's rightsgroup?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ _________________________________________________________________________ _________________________________________________________________________
70. Have you, your family members, or close friends ever beenthe victim of a violent crime?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ _______________________________________________________________________ _______________________________________________________________________
71. Have you, your family members, or close friends everwitnessed a violent crime?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
72. Have you ever been in an accident, natural occurrence, ortragedy that resulted in untimely death or serious injury(including hurricanes, earthquakes, automobile accidents,terrorist attacks, and similar events)?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
73. Would you have any particular difficulty in listening to orseeing evidence related to death or dying?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
74. How would you characterize your political affiliations?
(Check ALL that apply)
 Democratic Independent Republican Libertarian
 No specific party/depends on candidate Not interested in politics
 Other (please specify) __________________________________________________________________________

75. In general, do you consider yourself to be:
 Liberal Moderate Conservative Other: ___________
76. (a) Have you ever served as a juror in a trial before?
 NO YES (If YES, please fill out the following:)
 ------------------------------------------------------------------------------------------
| | When? | Criminal or | Type of Case? | Did the jury reach | Were you the |
| | | Civil? | | of verdict? | foreperson? |
|-----|---------|---------------|------------------|----------------------|----------------|
| 1 | | | | YES/NO | YES/NO |
|-----|---------|---------------|------------------|----------------------|----------------|
| 2 | | | | YES/NO | YES/NO |
|-----|---------|---------------|------------------|----------------------|----------------|
| 3 | | | | YES/NO | YES/NO |
 ------------------------------------------------------------------------------------------

If you have served on a jury, please describe your experience(s):___________________________________ ________________________________________________________________________
(b) Have you ever served as a grand juror before? NO YES
If YES, please describe your experience(s):______________________________________________ ______________________________________________________________________
77. Have you ever testified before a federal or state GrandJury?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ ___________________________________________________________________ ___________________________________________________________________
78. Have you ever been a party to a civil law suit?
 NO YES UNSURE
If YES, please describe the case and your role, or if UNSURE, please explain:_______________ __________________________________________________________________________ __________________________________________________________________________
79. Please check either YES or NO for the followingquestions:
 YES NO
A. Have you ever been questioned by law enforcement 
as a suspect of a crime?
---------------------------------------------------------------------------------------------
B. Have you ever been questioned by law enforcement 
as a witness or potential witness in an investigation?
---------------------------------------------------------------------------------------------
C. Have you ever been arrested? 
---------------------------------------------------------------------------------------------
D. Have you ever been convicted of a crime? 
---------------------------------------------------------------------------------------------
E. Has any close friend or relative ever been questioned 
by law enforcement as a potential witnesses to, or
suspect in, a crime or investigation?
---------------------------------------------------------------------------------------------
F. Has any close friend or relative ever been arrested? 
---------------------------------------------------------------------------------------------
G. Has any close friend or relative ever been convicted 
of a crime?
---------------------------------------------------------------------------------------------

For each YES, please explain the circumstances surrounding the incident, who was involved, and how long ago the incident occurred:_____________________________________________________________ ______________________________________________________________________ ______________________________________________________________________ ______________________________________________________________________
If YES, how do you feel about the result of each incident?_____________________________________ _______________________________________________________________________ _______________________________________________________________________
80. Have you, your family, or close friends had an experiencewith the following individuals, groups or agencies that was sogood or so bad that it stands out in your mind?
 GOOD BAD Neither
 A. Police or law enforcement agency 
 B. Federal, state, or local government agency 
 C. Attorney 
 D. Judge 

For each GOOD or BAD experience, please describe the circumstances, who was involved, and when the experience occurred: _____________________________________________________________________ _____________________________________________________________________ _____________________________________________________________________
81. Please list any Rhode Island or Massachusetts lawyers orjudges that you know personally or interact withregularly:_______________________________________________________ ______________________________________________________________________ ______________________________________________________________________
PART FOUR: SUBJECTIVE FEELINGS OF PROSPECTIVE JURORS
82. Please briefly describe your feelings or reactions about thefollowing:
A. Police and other law enforcement officers:_________________________________________ _________________________________________________________________________
B. Prosecutors:_____________________________________________________________ _________________________________________________________________________
C. Criminal Defense Attorneys:__________________________________________________________ _________________________________________________________________________
D. Judges:___________________________________________________________________ __________________________________________________________________________
E. Small Business Owners:__________________________________________________________________ _________________________________________________________________________
F. Our current criminal justice (court) system:____________________________________________ ________________________________________________________________________
83. Do you seek out positions of leadership when you participatewith others in your employment or other activities?
 Always Frequently Sometimes Rarely Never
84. In general, when you attend a large public gathering or flyon commercial airplanes, how often do you check to make sure thatyou know where emergency or fire exits are located?
 Always Frequently Sometimes Rarely Never
85. How concerned are you about safety when you are at a bar orother public facility containing a group of people?
 Very concerned Somewhat concerned Not at all concerned
86. Do you think it is important to strictly follow fire safetycodes and regulations?
 Always important Often important Sometimes important Never important

87. Do you think Rhode Island's building and fire coderegulations are too strict?
 NO YES UNSURE NO OPINION
88. Would you tend to believe the testimony of a police officermore, less, or the same as other witnesses who were not policeofficers?
 Believe more Believe less Believe the same as any other witness Unsure

89. Would you tend to believe the testimony of a witness who haspled guilty and made himself available to testify against otherscharged with crimes stemming from the same events more or lessthan any other witnesses?
 Believe more Believe less Believe the same as any other witness Unsure

90. Do you feel that the criminal justice system treatscriminals too harshly, about right, or too leniently?
 Too harshly Too leniently About right Unsure
91. Do you believe that if the prosecution goes to the troubleof bringing someone to trial, he or she is probably guilty?
 NO YES UNSURE
92. Do you believe that the law does too much to protect therights of criminal defendants and not enough to protect therights of victims?
 NO YES UNSURE
93. What TV shows, if any, do you enjoy watching regularly?
_____________________________ __________________________________________________________________________
94. What movies, if any, have you watched recently?
_____________________________________ __________________________________________________________________________
95. What books, if any, have you read recently?
_________________________________________ __________________________________________________________________________
96. What publicly known individual (such as a politician,historical figure, or celebrity), if any, do you admire, andwhy?
_________________________________________________________________ __________________________________________________________________________ __________________________________________________________________________
97. What do you like to do in your spare time/what are yourhobbies? ____________________ __________________________________________________________________________ __________________________________________________________________________
Concluding Questions
98. In a criminal case, the judge instructs the jury about whatthe law is. Every juror must accept and apply the law as thejudge provides it. A juror cannot substitute his or her ownconcepts or beliefs of what the law is or what the juror thinksthe law should be. The juror must apply the law that the judgeinstructs him/her about. Could you accept this fundamentalprinciple?
 NO YES UNSURE
If NO or UNSURE, please explain: _________________________________________________ __________________________________________________________________________ __________________________________________________________________________
99. In a criminal case, jurors must accept the followingfundamental principles of law:
 1. The Defendant is presumed innocent.
 2. The Defendant is presumed innocent unless or until the State proves the charges against the Defendant beyond a reasonable doubt.
 3. The State bears the burden of proving the Defendant guilty, and the Defendant does not have to present any evidence in his own defense.
 4. The Defendant does not have to testify in his own behalf, and a decision by the Defendant not to testify may not be considered in determining his guilt or innocence.
 Could you accept each of these fundamental principles of law?
 NO YES UNSURE
If NO or UNSURE, please explain: _________________________________________________ _______________________________________________________________________ _______________________________________________________________________
100. Do you have any moral, religious, ethical, or philosophicalbeliefs that prevent you from sitting in judgment of anotherperson in a criminal trial?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ __________________________________________________________________________ __________________________________________________________________________
101. Is there anything else that you think the Court should knowthat might influence your ability to fairly and impartially judgethe evidence in this case and to apply the law as instructed bythe Court?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ ________________________________________________________________________ ________________________________________________________________________
102. Is there anything about this questionnaire that has causedyou any concerns?
 NO YES UNSURE
If YES or UNSURE, please explain: ________________________________________________ _______________________________________________________________________ _______________________________________________________________________
I, _________________________________________, hereby declare under penalty of perjury that the foregoing answers set forth in this Jury Questionnaire are true and correct to the best of my knowledge and belief. I have not discussed my answers with others, or received assistance in completing the questionnaire. I have answered all of the above questions in this Jury Questionnaire myself.
Date:_______________________
 Please double check to see if you answered all questions completely. THANK YOU FOR YOUR TIME AND HONESTY
 EXPLANATION SHEET — Additional room for any answers Please remember to put the question number next to your answer.
________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________ ________________________________________________________________________
[1] For example: #4 (regarding anything going on in the respondent's life or work that would prevent them from being a juror on the case), ##20-23 (regarding the respondent's exposure to and personal opinions about the Station fire cases), ##24-25 (regarding any reasons the respondent would or would not want to be a juror on this case), ##32-34 (regarding where the respondent was born and where they now live) ##35-43 (regarding the respondent's exposure to fires and fireworks), ##49-50 (regarding the respondent's medical conditions and prescriptions), ##51-80 (regarding the respondent's biographical information, including their personal interests, what groups they are members of, what political parties they are affiliated with, their prior Grand Jury experience, their criminal record and whether they have been a victim of a crime), ##82-92 (regarding the respondent's subjective attitudes about certain professions within the criminal justice system and the criminal justice system itself), and ##93-97 (regarding what books the respondent has recently read, or movies and shows they've watched, who they admire and how they spend their free time).
[2] See the following section for reasons why the Court does not consider this speculation an exercise that necessitates the exercise of the Petitioner's First Amendment rights.
[3] Although the State and the Defendant combined requested approximately 140 jurors dismissed for cause, the Court did not actually dismiss any of them when the Defendant changed his plea. However, even if the Court had dismissed some jurors prior to in-court voir dire the right of access would not have attached to those questionnaires. Similar to the information gathered by the Jury Commissioner's Office as it determines which individuals are to be excused from jury duty each day, these questionnaires would be irrelevant to the ultimate issue of who is properly or improperly seated on the jury. Therefore closure of this information would not implicate the public's First Amendment rights.